181 N.J. Super. 109 (1981)
436 A.2d 944
ROBERT M. BANCA, PLAINTIFF-RESPONDENT,
v.
TOWN OF PHILLIPSBURG, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1981.
Decided October 19, 1981.
*111 Before Judges MATTHEWS, PRESSLER and PETRELLA.
John H. Pursel argued the cause for appellant (Herr & Fisher, attorneys).
Alfred G. Osterweil argued the cause for respondent (Osterweil, Wind & Loccke, attorneys; Barbara Landau of counsel and on the brief).
James R. Zazzali, Attorney General of New Jersey, filed a statement in lieu of brief on behalf of Civil Service Commission (Janet Share Zatz, Deputy Attorney General, of counsel and on the statement).
The opinion of the court was delivered by PRESSLER, J.A.D.
The question raised by this appeal is whether a municipal police officer is subject to disciplinary sanction for failure to cooperate in a departmental investigation of assumed criminal activity where he is a target of the investigation and has not been offered use immunity in respect of any subsequent criminal proceedings which might be brought against him. The Civil Service Commission answered this question negatively and we agree.
Plaintiff Robert Banca is a police officer employed by defendant Town of Phillipsburg, whose police department is subject to Civil Service. In the spring of 1979 there was a theft from the police department property room of $130 in cash and a group of pornographic films which had been seized as evidence. Suspicion ultimately focused on Banca, who, on April 12, 1979, was ordered by Lieutenant Ruch, then acting head of the police department, to report to headquarters at 8:30 that evening *112 although he was then home on sick leave. On his arrival at headquarters he was directed to the detective bureau. Ruch would not permit Banca's brother, who had accompanied him to headquarters because of his illness, to remain with him but he did allow Banca's P.B.A. delegate to be present during the interrogation, which was conducted by Ruch and one of the department's detectives who was conducting the investigation. Banca was told that he was the primary suspect in the investigation, given Miranda warnings, and asked to discuss the matter. He was not, however, told that failure to make a statement would result in disciplinary proceedings against him or that immunity would be afforded him preventing use in any subsequent criminal proceeding of any self-incriminating statement he might make.
Upon Banca's refusal to give any statement to the interrogating officers, he was forthwith placed under suspension and ordered to return to headquarters the following Monday. At that time he was again asked to make a statement and once again declined to do so, this time "on advice of counsel." He was then handed a preliminary notice of disciplinary proceedings. The gravamen of the charge made against Banca was his violation of a local departmental regulation requiring all police officers "to answer questions or render material and relevant statements in a department investigation when such questions and statements are directly related to job responsibilities."
The charge was sustained following a disciplinary hearing conducted by the town manager, who imposed the penalty of a five-month suspension. Banca appealed to the Civil Service Commission and following a hearing the administrative law judge recommended dismissal of the charges on the ground that Banca could not be disciplined for failure to cooperate in a departmental investigation of a crime where he was a target without having been afforded use immunity. The Civil Service Commission adopted that recommendation and the town appeals.
*113 The public employee's constitutional right not to incriminate himself, vouchsafed him by the Fifth and Fourteenth Amendments, inevitably collides with the need of the public employer, in the public interest and as a matter of the public trust, to require him to account for his conduct in public office. That conflict has been resolved by the United States Supreme Court in an evolutionary series of decisions which developed the constitutional doctrine that a public employee is not subject to disciplinary sanction solely by reason of his exercise of his privilege against self-incrimination during the course of official interrogation unless he has first been accorded the protection of use immunity barring admission in a subsequent criminal proceeding of any self-incriminating statement he may make. The conceptual basis of the doctrine is the recognition that when a public employee makes a self-incriminatory statement in response to a threat of discharge, that statement must necessarily be regarded as coerced and, therefore, as secured in violation of the employee's constitutional privilege not to incriminate himself. If, however, he is protected from the normal consequences of a self-incriminatory statement, that is, if the statement may not be used against him in a subsequent criminal proceeding, then the choice he must make between loss of his employment and the giving of the statement, however much a Hobson's choice it may be, does not offend his constitutional privilege. The offer, therefore, of use immunity when the statement is solicited is constitutionally prerequisite to the imposition of the disciplinary sanction for failing to give it. See Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Uniformed Sanitation Men Ass'n v. Commissioner (Sanitation Men I), 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); Uniformed S.M. Ass'n, Inc. v. Commissioner of S. of N.Y. (Sanitation Men II), 426 F.2d 619 (2 Cir.1970), cert. den. 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972); Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). Cf. *114 Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).
New Jersey responded to these cases by its 1970 adoption of N.J.S.A. 2A:81-17.2a1-17.2a5, inclusive, and the 1975 amendment of N.J.S.A. 2A:81-17.2a2. This legislation, in its present form, requires a public employee, despite his claim of privilege against self-incrimination but upon the grant of use immunity, to appear and testify before any court, grand jury or the State Commission of Investigation regarding matters directly related to the conduct of his office. Should he refuse to do so under these circumstances, whether or not he is a target of a criminal investigation, he is subject to removal from office provided he has first been advised that such removal may be a consequence of his refusal. See, generally, State v. Vinegra, 73 N.J. 484 (1977).
If we were dealing here with a proceeding covered by the act, its provisions would clearly apply, precluding imposition of a disciplinary sanction based solely on plaintiff's refusal to give a statement. Contrary to the statutory prerequisites, he was not advised that his refusal could result in such sanctions. More egregiously, not only was he not expressly offered use immunity but, to the contrary, he was given the erroneous warning that what he did say could be used against him.
The question, then, is whether the constitutional concerns underpinning the Garrity line of cases require the same result here even though the New Jersey statute does not address the interrogational situation here involved. We are convinced that they do since the same concerns are implicated whether the solicited statement is to be given under oath in a judicial or judicial-type of proceeding or not under oath in an official interdepartmental investigation. Thus, as the Supreme Court reaffirmed in Lefkowitz v. Turley, supra, 414 U.S. at 77, 94 S.Ct. at 322, the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer *115 official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." We note, moreover, that the interdicted interrogation in Garrity v. New Jersey, supra, was conducted during the course of an Attorney General's investigation and in Sanitation Men I, supra, during the course of a city commissioner's investigation. Indeed, the precise issue before the Court in Sanitation Men I was the propriety of the dismissal of a group of city sanitation men for failure to cooperate in that investigation. In concluding that the dismissals, so based, were constitutionally offensive, the court noted that
Petitioners were not discharged merely for refusal to account for their conduct as employees of the city. They were dismissed for invoking and refusing to waive their constitutional right against self-incrimination. They were discharged for refusal to expose themselves to criminal prosecution based on testimony which they would give under compulsion, despite their constitutional privilege. * * * They were entitled to remain silent because it was clear that New York was seeking not merely an accounting of their use or abuse of their public trust, but testimony from their own lips which, despite the constitutional prohibition, could be used to prosecute them criminally." [392 U.S. at 283-284, 88 S.Ct. at 1919-1920.]
That is precisely the situation here.
The Town of Phillipsburg does not at this point dispute the governing constitutional principles. Indeed, its position before us seems to be exclusively based on those principles. Thus, it now apparently contends that since as a matter of constitutional law any self-incriminatory response which Banca would have made would have been automatically subject to use immunity, he had no Fifth Amendment basis for refusing to respond. The further argument is that Banca, as a police officer, should have known of the availability of the use immunity in these circumstances. We find the argument unpersuasive both factually and legally. As a factual proposition, we are satisfied that anything which Banca might have believed regarding the availability of use immunity, if the concept indeed occurred to him at all, was effectively vitiated by the giving, in an obviously threatening and accusatorial situation, of a Miranda *116 warning whose import is precisely and diametrically the opposite of use immunity. More significantly, however, we are convinced that when a constitutional right as significant as the privilege against self-incrimination is at stake, its vindication cannot be made dependent upon a mere assumption, probably erroneous, regarding the investigatory target's acquaintance with evolving constitutional doctrine. Thus, we hold that Banca was required to have been clearly, unambiguously and expressly advised of his use immunity at the outset as a prerequisite to the subsequent imposition of a disciplinary sanction for refusal to make a statement. We also hold that as a further prerequisite thereto he was required to have been told that his refusal could subject him to that consequence. We deem it a matter of constitutional mandate, as well as fundamentally fair, that that express proviso of N.J.S.A. 2A:81-17.2a2 be applied to departmental investigations as well as to judicial and grand jury proceedings.
Finally, we are of the view that a careful distinction must be drawn between the situation before us, in which the only gravamen of the disciplinary charge is the refusal to give a statement during the course of an official investigation, and the quite different situation in which the gravamen of the charge is an act of specific wrongdoing which the public employee believes he can defend against only by making a self-incriminatory statement. As we pointed out in Ott v. Hamilton Tp. Bd. of Ed., 160 N.J. Super. 333, 338-339 (App.Div. 1978), cert. den. 78 N.J. 336 (1978), where we rejected the applicability of the Garrity line of authority, the latter situation does not involve the kind of compulsion which makes a dismissal for mere silence constitutionally defective in the absence of a prior grant of immunity. Thus, we noted in Ott that the failure of a public employee to respond to a specific charge of misconduct on Fifth Amendment grounds does not itself, automatically and ipso facto, result in penalty. It means only that the substantive charge must be adjudicated on available evidence without the employee's statement. The point we make is that for purposes of disciplinary *117 action, mere silence cannot be made the basis of the misconduct charge unless there has been a prior explanation of the use immunity to which the statement is entitled. We regard Boulware v. Battaglia, 344 F. Supp. 889 (D.Del. 1972), aff'd 478 F.2d 1398 (3 Cir.1972), on which the town relies, as distinguishable on this ground.
Affirmed.