624 A.2d 1038

THE STATE OF NEW JERSEY, COMPLAINANT,

v. Y.B., A JUVENILE, DEFENDANT.

Superior Court of New Jersey
Chancery Division Family Part
Essex County

Decided: March 4, 1993.

Before Judges GAULKIN, HAVEY and BROCHIN.

*William Ware,* Assistant Prosecutor Attorney for the State.

*Paul Bini,* Public Defender, for defendant Y.B.

## OPINION

RUDD, J.S.C.

This is phase II of a plenary hearing which was initiated by the State, on September 21, 1992, pursuant to *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2. At the time of the alleged incident, the defendant was a 17 year old juvenile. He is now 18 years old and will be referred to as Y.B., aka P.J. The victim is a 4 year old boy who will be referred to as T.D. The defendant and the victim are cousins.

## *FACTS*

This matter stems from an incident that occurred on September 4, 1992, for which Y.B. was charged by the Newark Police Department with aggravated sexual assault and endangering the welfare of a child he was supervising, crimes of the first and third degree. *N.J.S.A.* 2C:14–2, *N.J.S.A.* 2C:24–4.

On September 21, 1992, the State brought a motion for an order waiving this court's jurisdiction over Y.B. and transferring the matter to the Adult Court pursuant to *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2. Consequently, a Phase I plenary hearing date was set.

On October 26, 1992, at the phase I plenary hearing, I found probable cause to believe that while Y.B. was supervising T.D. and watching pornographic movies, he sexually assaulted T.D. by inserting his penis into T.D.'s anus twice and into his mouth once. I based these findings on T.D.'s graphic statement made to Detective Foster which connects Y.B. to the sexual assault. Hearsay evidence is permitted in probable cause hearings *State v. Price*, 108 *N.J.Super.* 272, 260 *A.*2d 877 (Law Div.1970).

Specifically, T.D.'s statement reveals that he is capable of making his own decisions and was not merely being led. For example, when Detective Foster asked, "T.D., did P.J. put his ding-a-ling in your mouth?" T.D. answered, "Yes." Then, Detective Foster asked, "T.D., did P.J. ask you to touch his ding-a-ling?" T.D. replied, "No." If T.D. was merely being led, he would have responded "Yes," rather then "No".

Similarly, T.D.'s statement reveals that he is capable of responding to questions with good discretionary answers. For instance, when Detective Foster asked, "T.D., did P.J. take your clothes off?" T.D. answered, "No, he pulled my pants down ..."

Lastly, T.D. stated that Y.B. was "watching a nasty movie and then he stuck his ding-a-ling in my butt." I can not think of a better word than "nasty" to describe pornographic. It is a decisive description of what was arousing Y.B., and coming from T.D. gives T.D. a creditability as to all of his testimony. T.D. further stated that after he told Y.B. that it "hurt" when Y.B. inserted his penis into his anus, "he [Y.B.] did it again in the bathroom, and when someone knocked we pulled our pants back up and waited for them to leave before coming out of the bathroom." T.D. also stated that Y.B. told him "not to tell nobody what we did."

This brings us to the matter at hand, phase II of the plenary hearing pursuant to *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2.

### ISSUE

Is the jurisdictional waiver statute, *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2, or any part of it, unconstitutional? Particularly, whether

the first part of phase II violates a juvenile's Fifth Amendment right, to be free from compelled self-incrimination, by requiring the juvenile to admit wrong doing in order to be eligible to receive the statutory benefits of rehabilitation and the consequent right to remain in Juvenile Court?

## *OPINION*

I find that the statutory coercion on a juvenile to admit wrong doing, in order to be eligible to receive the statutory benefits of rehabilitation, and the consequent right to remain in Juvenile Court, renders the first part of phase II of the jurisdictional waiver statute unconstitutional.

The procedure for waiver of jurisdiction is initiated by the State. Specifically, the State brings a motion to transfer (or waive) the juvenile matters from the Juvenile Court to an adult criminal court pursuant to *N.J.S.A.* 2A:4A–26 and *R.* 5:22–2. After this motion is made, there is a plenary hearing to decide whether such waiver is proper. This plenary hearing is done in two parts; phase I and phase II.

The methodology of phase I and phase II are set forth in the waiver statute (*N.J.S.A.* 2A:4A–26 and *R.* 5:22–2) and by the New Jersey Supreme Court in *State v. R.G.D.* 108 *N.J.* 1, 527 *A.*2d 834 (1987) and *In the Interest of C.A.H. & B.A.R.*, 89 *N.J.* 326, 446 *A.*2d 93 (1982). In short, at phase I, the State has the burden of proving that (1) the juvenile was 14 years of age or older at the time of the charged delinquent act *N.J.S.A.* 2A:4A–26(a)(1), and (2) there is probable cause to believe that the juvenile committed either an enumerated offense under *N.J.S.A.* 2A:4A–26(a)(2)(b), (c), (e), (f), (g) such as criminal homicide, robbery, sexual assault, etc ..., referred to as "Chart 1" offenses in which there is a presumption in favor of waiver *State v. R.G.D., supra,* 108 *N.J.* at 9–12, 527 *A.*2d 834, or "an offense against a person committed in an aggressive, violent, and willful manner" *N.J.S.A.* 2A:4A–26(a)(2)(d).

If the State satisfies this burden, which in this case it did, then at phase II, the burden of proof shifts to the juvenile to "show that the probability of his rehabilitation by the use of the procedures, services, and facilities available to the court prior to reaching the age of 19 substantially outweighs the reasons for waiver" *N.J.S.A.* 2A:4A–26(a)(3). This analysis also consists of two parts: The court must first determine whether rehabilitation can realistically be achieved through available facilities by the time the juvenile reaches the age of 19. If it concludes that rehabilitation can not realistically be achieved, the analysis is complete and waiver is justified *In the Interest of C.A.H. & B.A.R., supra,* 89 *N.J.* at 338–339, 446 *A.*2d 93. On the other hand, even if the Juvenile Court finds that rehabilitation can realistically be achieved, the court must then determine whether the probability for rehabilitation overcomes the public's need for deterrence in the given case. *Id.* In making this determination, a court must measure the nexus between the juvenile's rights (not to be transferred and be rehabilitated) and society's rights (to transfer and make an example out of the juvenile). In other words, a court must balance the probability of rehabilitation with the need of deterrence. *Id.*

Lastly, the demands of due process at waiver hearings are limited; however, the basic requirements of due process and fairness must be satisfied *State in Interest of B.G.,* 247 *N.J.Super.* 403, 422, 589 *A.*2d 637 (1991).

In this case, as stated above, at phase I of the plenary hearing, I found probable cause to believe that while Y.B. was supervising T.D. and watching pornographic movies, he sexually assaulted him by inserting his penis into T.D.'s anus twice and into his mouth once.

This brings us to the matter at hand, phase II. The defense offers no evidence *i.e.* no expert testimony and no testimony of Y.B. or a parent, that Y.B. can be rehabilitated by the age of 19. However, the defense could not offer such evidence unless Y.B. admits wrong doing. It is this court's opinion that one can only be rehabilitated after an admission of wrong doing. Moreover, prior

opinions offered in court by Dr. Grossman, on behalf of the State, consistently and invariably hold that one must first admit wrong doing before one can be rehabilitated. In fact, Dr. Grossman presumes there is an admission of wrong doing, when determining whether rehabilitation is possible.

Similarly, with substance abuse, "the first step to recovery [being rehabilitated] is admitting you have a problem . . ." Emily Mariln, President of New York Association for Marriage and Family Therapy, *Hope: New Choices and Recovery Strategies for Adult Children of Alcoholics*, 88 (Harper & Row Publishers 1987). "When we admit our powerlessness and our inability to manage our own lives, we open the door to recovery. It is an admissions that we have to make for ourselves" *Narcotics Anonymous*, 19 (World Service, Inc. 5th ed. 1988).

Therefore, I find that the first part of phase II of the jurisdictional waiver statute is unconstitutional. Specifically, it violates a juvenile's Fifth Amendment right, to be free from compelled self-incrimination, by requiring a juvenile to admit wrong doing in order to be eligible to receive the benefits of rehabilitation and the consequent right to remain in Juvenile Court. In other words, a juvenile has no choice in deciding whether to confess (and possibly remain in Juvenile Court), or not confess (and automatically be transferred to an adult court) and lose all the protective and rehabilitative possibilities of the Juvenile Court.

Likewise, in *State v. Clark*, 58 *N.J.* 72, 275 *A.*2d 137 (1971), a welfare agent informed the defendant-mother that in order to get welfare benefits, she had to file a bastardy complaint against the father of her children. At the bastardy proceeding, the defendant-mother admitted that she had sexual relations with the defendant-father resulting in the birth of two illegitimate children. As a result of her self-incrimination, she was charged and convicted of fornication. However, the New Jersey Supreme Court reversed the fornication conviction on the grounds that the defendant-mother's Fifth Amendment rights were violated because: (1) the various welfare representatives failed to advise her of such

rights in the initial stages of the welfare and bastardy proceedings, and (2) the defendant-mother was required to incriminate herself as a condition of the receipt of welfare benefits. *Id.* Thus, the New Jersey Supreme Court recognized, as I recognize in the present case, that self-incrimination which is statutorily required in order to receive a benefit is coercive, and thus unconstitutional.

■ Consequently, we are left with a jurisdictional waiver statute and confirmation by the New Jersey Supreme Court, in *State v. R.G.D., supra,* 108 *N.J.* at 1, 527 *A.*2d 834, that a motion to transfer jurisdiction is a legitimate statutory function. Phase I would remain intact. That is, the State has the burden of establishing probable cause. Phase II, however, would consist only of its second part *i.e.* measuring the nexus between the individual's rights (not to be transferred and be rehabilitated) and society's rights (to transfer and make an example out of the juvenile). The first part of phase II *i.e.* whether rehabilitation can realistically be achieved through the available facilities by the time the juvenile reaches the age of 19, is to be omitted. It is no longer a prerequisite to remain in Juvenile Court; rather, it is merely one of several factors to consider. Thus, a juvenile, who might not have done anything wrong, is no longer statutorily coerced to admit to wrong doing simply to be eligible to reap the statutory benefits of rehabilitation in Juvenile Court. It is to be noted that the New Jersey Supreme Court, in *State v. R.G.D., supra,* 108 *N.J.* at 1, 527 *A.*2d 834, did not make an analysis of the this aspect of the waiver statute.

This methodology is consistent with several other states' jurisdictional waiver statutes. See *Re Appeal in Coconino County Juvenile,* 154 *Ariz.* 240, 741 *P.*2d 1218 (1987), *People v. Beck,* 190 *Ill.App.*3d 748, 138 *Ill.Dec.* 72, 546 *N.E.*2d 1127 (1989), *State v. Meyers,* 245 *Kan.* 471, 781 *P.*2d 700 (1989), and *State v. Stevenson,* 55 *Wash.App.* 725, 780 *P.*2d 873 (1989). Specifically, the Court of Appeals of Michigan, in *People v. Rader,* 169 *Mich.App.* 293, 425 *N.W.*2d 787 (1988), noted that the criteria which its Probate Court

must consider in determining whether jurisdiction should be waived are as follows:

"On a showing of probable cause, the court shall conduct a full investigation to determine whether the interest of the child and the public would best be served by granting a waiver of jurisdiction to a court of criminal jurisdiction. In making the determination, the court shall consider and make findings on the following criteria before a waiver is granted:

(a) the child's prior record and character, physical and mental maturity, and pattern of living;

(b) the seriousness of the offense;

(c) even though less serious, if the offense is part of a repetitive pattern of offenses which would lead to a determination that the child may be beyond rehabilitation under the regular statutory juvenile procedures;

(d) the relative suitability of programs and facilities available to the juvenile and criminal courts for the child;

(e) whether the best interests of the public welfare and the protection of the public security, generally require that the child stand trial as an adult offender."

■ In this case, the defense argues that the nexus favors Y.B. *i.e.* Y.B.'s rights not to be transferred and be rehabilitated outweigh society's rights to transfer and make an example out of him. Although I find it unconstitutional to coerce Y.B. to admit wrong doing, I find that the nexus does not favor him; it favors society, and thus grant the State's motion to transfer. I base this finding on the following: First, the offense took place only 43 days before Y.B.'s 18th birthday. Second, the seriousness of the act of aggravated sexual assault. Third, the need for deterrence of such conduct. Lastly, sexual assault is a "chart I" offense, and thus there is a presumption of waiver *R.G.D., supra*, 108 *N.J.* at 9–12, 527 *A.*2d 834.

The motion to transfer is granted.