271 N.J. Super. 192 (1994)
638 A.2d 814
STATE OF NEW JERSEY IN THE INTEREST OF A.L., A JUVENILE.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1993.
Decided February 28, 1994.
*196 Before Judges KING, ARNOLD M. STEIN and ARIEL A. RODRIGUEZ.
Lorraine A. DiCintio argued the cause for appellant (Ballen, Gertel & DiCintio, attorneys; Ms. DiCintio, on the brief).
Raymond A. Marcolongo, Assistant Prosecutor, argued the cause for respondent (Michael Brooke Fisher, Cumberland County Prosecutor, attorney; Mr. Marcolongo, on the letter brief).
The opinion of the court was delivered by KING, P.J.A.D.
We granted the juvenile A.L.'s motion for leave to appeal[1] to consider a challenge to the constitutionality of the juvenile waiver statute, N.J.S.A. 2A:4A-26; see R. 5:22. The appellant, A.L., challenges N.J.S.A. 2A:4A-26(a)(3)[2], the section of the statute that places upon him, as a juvenile, the burden of showing the probability that he can be rehabilitated through the social services available to the family court before reaching age nineteen. A recent Family Part decision ruled that this section was unconstitutional because it conflicted with the accused's right against compelled self-incrimination. See State v. Y.B., 264 N.J. Super. 423, *197 624 A.2d 1038 (Ch.Div. 1993). We conclude that the juvenile waiver statute is constitutional in this respect and that the transfer or referral of the prosecution of this juvenile to adult court was within the sound discretion of the Family Part judge.

I
During the early hours of May 23, 1992 at the Tall Pines campground in Alloway, the juvenile allegedly seriously wounded Thomas Seely with a machete, causing a large laceration to the victim's head and nearly severing his thumb. The juvenile, age fifteen at the time, gave a statement to the police in which he admitted the attack. He said that he was angry over something the victim had said about a young woman. The juvenile allegedly was drinking heavily with a group of young men at the campsite before the attack occurred.
He was arrested and charged with first-degree attempted murder, N.J.S.A. 2C:5-1; third-degree aggravated assault, N.J.S.A. 2C:12-1(b); and fourth-degree criminal mischief, N.J.S.A. 2C:17-3. On June 17, 1992 the State moved for involuntary waiver, pursuant to N.J.S.A. 2A:4A-26 and R. 5:22-2.
The two-phase waiver hearing was held before Judge Serata on September 29 and October 29, 1993. At Phase I, the judge found that the State had shown probable cause that A.L. committed the charged offense based on his statement and the testimony of witnesses. At Phase II, A.L. presented evidence of probable rehabilitation through the resources available to the court before age nineteen. Dr. John Rushton, a psychiatrist, testified to a "vague" plan of rehabilitation by psychiatric therapy. Dr. Rushton believed that alcohol was a precipitating factor in the event, but did not express any opinion as to whether A.L. was an alcoholic. The doctor also thought that the behavior was unlikely to recur.
On December 2, 1992 the judge issued a written opinion granting the State's motion for involuntary waiver. The judge based his decision on his finding that the juvenile failed to meet his *198 burden of showing the probability of rehabilitation through the use of procedures and services available to the court prior to reaching the age of nineteen. The judge also gave "great weight to the nature of the offense ... which is a first degree offense."
On July 26, 1993 the juvenile filed a motion for reconsideration of the waiver based on State v. Y.B., supra, 264 N.J. Super. at 423, 624 A.2d 1038, decided on March 4, 1993. There, the Family Part judge stated that the portion of the waiver statute placing the burden on a juvenile to demonstrate the probability of rehabilitation through the resources available to the court prior to reaching the age of nineteen was unconstitutional because it violated the accused juvenile's right against compelled self-incrimination. The judge denied A.L.'s motion for reconsideration on August 19, 1993. On August 30 A.L. moved for leave to appeal, which we granted on September 27.

II
Our analysis begins with the recognition that a person who commits a criminal offense while under the age of eighteen has no constitutional right to different treatment than adult offenders. The extent of any right to treatment as a juvenile is derived from statutory law and is defined by state legislatures. A state legislature is free to restrict or qualify that right, so long as it does not create an arbitrary or discriminatory classification scheme. Woodard v. Wainwright, 556 F.2d 781, 785 (5th Cir.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); United States v. Bland, 472 F.2d 1329, 1333-34 (D.C. Cir.1972), cert. denied, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973). See also People v. Hana, 443 Mich. 202, 504 N.W.2d 166, 175 (1993) ("in derogation of the common law, juvenile justice procedures are governed by statutes and court rules that ... courts are required to follow in the absence of constitutional infirmity").
All fifty states have provisions by which dangerous or intractable youthful offenders can be removed from the juvenile justice system. See generally, Barry Field, The Juvenile Court *199 Meets the Principle of the Offense: Legislative Changes in Juvenile Waiver Statutes, 78 J.Crim.L. & Criminology 471 (1987). The mechanism most commonly used is "judicial waiver." Judicial waiver statutes provide that a judge may transfer a juvenile to adult court, at the judge's discretion, if certain statutory criteria are met. In those jurisdictions, the state bears the burden of presenting sufficient evidence to convince a rehabilitation-oriented court that the juvenile is not amenable to treatment and poses a threat to the community. Ibid. See, e.g., 705 Ill.Comp.Stat.Ann. § 405/5-4(3)(a) (West Supp. 1993).
The federal Supreme Court reviewed this practice in Kent v. United States, 383 U.S. 541, 556, 86 S.Ct. 1045, 1055, 16 L.Ed.2d 84, 94 (1966), where the Court characterized juvenile waiver proceedings as "a `critically important' action determining vitally important statutory rights of the juvenile." The Kent Court extended constitutionally guaranteed due process rights available to adults in criminal trials to juvenile waiver proceedings. These rights include the right to a hearing, representation by counsel, access to information considered by the court in reaching its decision, and a statement of reasons for the waiver. Id. at 557-63, 86 S.Ct. at 1055-58, 16 L.Ed.2d at 95-98. In Kent's appendix, the Court identified several factors which should guide the judge's decision including: the gravity of the offense and seriousness of injury; the maturity of the juvenile; the prior record; the responsiveness to prior rehabilitative attempts; and the ability of dispositional alternatives available to the court to rehabilitate the juvenile or protect the public. Id. at 565-67, 86 S.Ct. at 1059-60, 16 L.Ed.2d at 99-100. These factors have been incorporated in numerous waiver statutes, including our own. See N.J.S.A. 2A:4A-26.
During the past twenty years, a dramatic national increase in juvenile crime has led to a trend departing from the rehabilitation model. Numerous states have abandoned "judicial waiver" in favor of mechanisms which embody "just desserts" punishment-oriented policies, and which facilitate the transfer of juvenile *200 offenders who commit serious crimes. State v. R.G.D., 108 N.J. 1, 7, 527 A.2d 834 (1987). These waiver statutes generally fall into two categories: "legislative offense exclusion" and "prosecutorial waiver."
Offense exclusion statutes omit certain categories of serious offenses, usually major felonies, from juvenile court jurisdiction. Juveniles charged with any of the enumerated offenses are presumptively not entitled to remain in juvenile court. Some variations of this waiver mechanism, such as our New Jersey statute, require a full evidentiary hearing to allow the juvenile the chance to rebut the statutory presumption  that the juvenile is an unfit candidate for juvenile treatment. See also Commonwealth v. Wayne W., 414 Mass. 218, 606 N.E.2d 1323 (1993). Others provide for "automatic transfer" with no hearing. See e.g., State v. Pierre, 614 So.2d 1309 (La. Ct. App. 1993), reversed on other grounds, 631 So.2d 427 (La. 1994).
The second category, "prosecutorial waiver," provides for concurrent jurisdiction between juvenile and criminal courts over major felonies. Under these statutes, the prosecutor rather than the judge is vested with discretion to determine the forum. Generally, no waiver or transfer hearing is required. See, e.g., Fl.Stat.Ann. §§ 39.047(4)(e)(5), 39.052(2) (West 1991).
To date, neither of these waiver mechanisms has been successfully challenged on constitutional grounds. Significantly, statutes which allow transfer of juveniles solely on the basis of age and gravity of offense, without any hearing, have survived due process and equal protection challenges. See, e.g., Cox v. United States, 473 F.2d 334, 337 (4th Cir.), cert. denied, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973), which upholds a federal statute authorizing a prosecutorial decision to charge a juvenile age seventeen at the time of committing a serious offense as an adult without a hearing, reasoning that due process protections extend to judicial and quasi-judicial proceedings, but not to the exercise of prosecutorial decision-making; United States v. Bland, supra, 472 F.2d at 1338, which upholds a District of Columbia Code provision *201 which excluded persons over age sixteen who were charged with certain serious offenses from juvenile jurisdiction without benefit of a hearing; State v. Pierre, supra, 614 So.2d at 1312, where a statute which failed to provide for a transfer hearing or rebuttal of presumption in favor of juvenile remaining under juvenile court jurisdiction was held constitutional; Commonwealth v. Wayne W., supra, 606 N.E.2d at 1326-28 (constitutional due process rights are not violated by juvenile transfer statute providing that, upon finding of probable cause to suspect that the juvenile committed murder, juvenile assumes initial burden of producing evidence on issues of dangerousness and amenability to rehabilitation); In the Matter of Wood, 236 Mont. 118, 768 P.2d 1370, 1373-76 (1989) (transfer statute which did not grant persons age sixteen or older who had committed certain crimes a hearing to consider mitigating factors before transferring the case to adult court did not violate due process or equal protection doctrines); State v. Berard, 121 R.I. 551, 401 A.2d 448, 452-53 (1979) (upholding statute which allowed the prosecutor, without hearing, discretion to prosecute certain classification of juveniles in adult court).
Courts have generally reasoned in this context that what a legislature may do absolutely, it may do conditionally. State v. Berard, supra, 401 A.2d at 556-57. Since statutes governing transfer from juvenile court do not involve a fundamental right or suspect classification, they survive challenges based on due process or equal protection grounds if they are not arbitrary and bear a rational relationship to a legitimate state interest. See, e.g., Lane v. Jones, 244 Ga. 17, 257 S.E.2d 525, 526-27 (1979) (statute allowing the transfer of juvenile to adult court without a hearing is constitutional; treatment as a juvenile is not an inherent right, but one granted by the legislature, which may restrict or qualify that right in any rational way it so chooses); cf., Marshall v. United States, 414 U.S. 417, 428, 94 S.Ct. 700, 707, 38 L.Ed.2d 618, 647 (1974) (applying rational basis test and upholding classification scheme of Narcotic Addict Rehabilitation Act of 1966 which excluded addicts with two or more felony convictions from discretionary *202 rehabilitative commitments in lieu of penal incarceration; reasonable and rational for Congress to conclude that defendant with prior felonies would be less auspicious prospect for treatment).
In the past, New Jersey's statutory transfer mechanism was by judicial waiver. Our prior law focused on the need to rehabilitate the juvenile, and expressed a presumption of nonwaiver in most cases. State in the Interest of L.C., 184 N.J. Super. 569, 572-73, 446 A.2d 1233 (App.Div. 1982). This presumption now has been reversed for serious offenses. Presently, the standards for waiver of juvenile offenders to adult court under our Code of Juvenile Justice are set out in N.J.S.A. 2A:4A-26, which provides in pertinent part:
a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the Superior Court, Chancery Division, Family Part to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing that:
(1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and
(2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
(a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to N.J.S. 2C:35-9, robbery which would constitute a crime of the first degree, aggravated sexual assault, sexual assault, aggravated assault which would constitute a crime of the second degree, kidnapping or aggravated arson....
....
(g) An attempt or conspiracy to commit any of the acts enumerated in paragraph (a), (d) or (e) of this subsection....
....
(3) However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted. ... [Emphasis supplied.]
Under this offense-exclusion statute, if a juvenile defendant is charged with a so-called "Chart I" serious offense, the State's only burden at Phase I, the adjudicative stage, is to establish probable cause that the juvenile committed that Chart I offense at a time when he was age fourteen or older. "No additional showing is required for waiver to occur." The Senate Judiciary Statement to *203 Assembly No. 641, the New Jersey Code of Juvenile Justice, § 7; State v. R.G.D., supra, 108 N.J. at 9-11, 527 A.2d 834; State in the Interest of S.M., 211 N.J. Super. 675, 681, 512 A.2d 570 (App.Div. 1986).
Once the prosecutor sustains the burden of proving probable cause in Phase I, the statute creates a rebuttable presumption that the juvenile will be transferred to adult court. State in the Interest of A.B., 109 N.J. 195, 199, 536 A.2d 240 (1988); State v. R.G.D., supra, 108 N.J. at 12, 527 A.2d 834; State in the Interest of A.J., 232 N.J. Super. 274, 292, 556 A.2d 1283 (App.Div. 1989). At Phase II, the dispositional stage, the burden of proof shifts to the juvenile, who can defeat the presumption of waiver through a twofold showing. First, the juvenile must demonstrate the probability of rehabilitation before reaching the age nineteen, utilizing the resources available to the court. State v. R.G.D., supra, 108 N.J. at 11, 527 A.2d 834; State in the Interest of S.M., supra, 211 N.J. Super. at 681, 512 A.2d 570. Second, the juvenile must demonstrate that the probability of rehabilitation substantially outweighs the reasons for waiver. Ibid.
In order to ensure that the juvenile can participate fully at any stage of the waiver proceeding, the Legislature has immunized the juvenile's testimony. State v. Ferguson, 255 N.J. Super. 530, 537-38, 605 A.2d 765 (App.Div. 1992). N.J.S.A. 2A:4A-29 provides that "[n]o testimony of a juvenile at a hearing pursuant to section 7 or 8 shall be admissible for any purpose in any hearing to determine delinquency or guilt of any offense."
We conclude that New Jersey's statutory scheme is clearly constitutional in the wider sense. As observed, historically, a juvenile has no right to remain before the juvenile court, except as provided by statute. A juvenile is not even constitutionally entitled to a hearing before transfer to adult court. In light of this history, we conclude that a legislature may completely exclude certain serious offenses from juvenile court jurisdiction. The legislature may also place the burden of proof on the juvenile to rebut the strong presumption of unfitness for juvenile treatment *204 created by the statute. We conclude that this classification scheme is neither arbitrary nor discriminatory. The legislature may quite rationally assume that a juvenile who has committed a serious crime poses a danger to the community and probably may not be amenable to rehabilitation within the juvenile system.
In the recent Family Part decision, State v. Y.B., supra, 264 N.J. Super. at 429-30, 624 A.2d 1038, the judge said that the portion of N.J.S.A. 2A:4A-26 which, in Phase II, places the burden on the juvenile to show that the probability of rehabilitation substantially outweighs the reasons for waiver was unconstitutional. The judge found this section violative of the right against compelled self-incrimination because the juvenile was required to admit wrongdoing in order to remain within the jurisdiction of the Family Part. Id. at 427, 429, 624 A.2d 1038. The judge's decision in Y.B. did not take into account the Juvenile Code's immunity provision or the decisions construing the right against self-incrimination, particularly in the context of use and derivative use of compelled testimony.
The Fifth Amendment to the United States Constitution is applicable to the states through the due process clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653, 658 (1964). Although not part of New Jersey's Constitution, the privilege against compelled self-incrimination is firmly established in the common and statutory law of New Jersey and has been incorporated into our Rules of Evidence. N.J.S.A. 2A:84A-17 to 19; N.J.R.E. 501, 502, 503 (formerly Evid.R. 23, 24, 25); In re Ippolito, 75 N.J. 435, 440, 383 A.2d 117 (1978). The Fifth Amendment states, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend V. In addition to authorizing a defendant to refuse to testify at his own trial, it also allows any person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings ... unless and until he is protected at least against the use of his *205 compelled answers," Lefkowitz v. Turley, 414 U.S. 70, 77-78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274, 281-82 (1973).
As an essential corollary to the privilege, the federal Supreme Court has made clear that the government may not impose a substantial penalty for the legitimate assertion of one's Fifth Amendment rights. In a line of so-called "penalty cases," the Court struck down statutes which "coerced" waiver of the Fifth Amendment privilege under threat of various governmental penalties. Typically, these statutes forced individuals to choose between self-incrimination and the loss of some substantial economic or personal advantage. See, e.g., Minnesota v. Murphy, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409, 418-19 (1984) (revocation of probation); Lefkowitz v. Cunningham, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135-36, 53 L.Ed.2d 1, 6-7 (1977) (disqualification from holding public office for five years); Lefkowitz v. Turley, supra, 414 U.S. at 71, 94 S.Ct. 316 at 320, 38 L.Ed.2d at 278 (loss of current public contracts and right to enter into future public contracts); Gardner v. Broderick, 392 U.S. 273, 276-79, 88 S.Ct. 1913, 1915-17, 20 L.Ed.2d 1082, 1085-87 (1968) (removal from legal profession); Garrity v. New Jersey, 385 U.S. 493, 497, 87 S.Ct. 616, 618-19, 17 L.Ed.2d 562, 565-66 (1967) (removal from public office).
In contrast, the Court has held that there is no "coercion," within the meaning of the Fifth Amendment, where the government merely withholds a benefit from individuals who refuse to provide potentially incriminatory information. See, e.g., Selective Serv. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 856-57, 104 S.Ct. 3348, 3357-58, 82 L.Ed.2d 632, 646 (1984) (students seeking government-sponsored financial aid for education could be required to reveal, as pre-condition to receipt of aid, whether they had registered for the draft).
The Court also has held that Fifth Amendment rights are not implicated where the government requires self-incrimination in exchange for an act of leniency. For instance, in a line of "plea bargain" cases, the Court has consistently rejected the argument *206 that an offer of a lower sentence in exchange for a guilty plea impermissibly coerces a defendant to waive his privilege against self-incrimination. See, e.g., North Carolina v. Alford, 400 U.S. 25, 38-39, 91 S.Ct. 160, 168, 27 L.Ed.2d 162, 171-72 (1970) (guilty plea not compelled or invalid under Fifth Amendment where made voluntarily and intelligently because induced by fear of possible death penalty); Corbitt v. New Jersey, 439 U.S. 212, 216, 99 S.Ct. 492, 496, 58 L.Ed.2d 466, 472-73 (1978) (upholding statutory scheme where a defendant who pled non vult to a murder, rather than proceeding to a jury trial, could receive, at the discretion of the sentencing judge, the second-degree murder sentence of up to thirty years rather than the mandatory life imprisonment term for first-degree murder); Bordenkircher v. Hayes, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604, 612 (1978) (prosecutor's offer to accept guilty plea to a lesser charge "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution").
The federal Supreme Court has reasoned in these cases that "[t]he criminal process, like the rest of the legal system, is replete with situations requiring `the making of difficult judgments' as to which course to follow." McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711, 729 (1971) (citations omitted). Accordingly, the Constitution does not "forbid[] every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." Chaffin v. Stynchcombe, 412 U.S. 17, 30-31, 93 S.Ct. 1977, 1984, 36 L.Ed.2d 714, 725-26 (1973). Although a defendant has the right to follow a course of his choosing, "the Constitution does not by that token always forbid requiring him to choose." McGautha v. California, supra, 402 U.S. at 213, 91 S.Ct. at 1470, 28 L.Ed.2d at 729.
The federal Supreme Court has consistently held that the government may compel incriminating testimony without violating the Fifth Amendment if the person testifying is immunized from *207 use of testimony in future criminal proceedings. See, e.g., Minnesota v. Murphy, supra, 465 U.S. at 435-36 n. 7, 104 S.Ct. at 1196 n. 7, 79 L.Ed.2d at 425 n. 7 ("State may validly insist on answers to even incriminating questions ... as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination"); Lefkowitz v. Turley, supra, 414 U.S. at 84, 94 S.Ct. at 325, 38 L.Ed.2d at 285 ("Constitution permits ... testimony to be compelled if neither it nor its fruits are available for such use[]"); Kastigar v. United States, 406 U.S. 441, 460-61, 92 S.Ct. 1653, 1664-65, 32 L.Ed.2d 212, 226-27 (1972) (government can compel testimony from an unwilling witness by conferring use immunity; transactional immunity is not required); Gardner v. Broderick, 392 U.S. 273, 276, 88 S.Ct. 1913, 1915, 20 L.Ed.2d 1082, 1085 (1968) ("[a]nswers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying[]"). Our New Jersey courts also have recognized and applied this principle. See, e.g., State v. Vinegra, 73 N.J. 484, 491, 376 A.2d 150 (1977) (non-target grand jury witness can be compelled to testify if granted immunity); Banca v. Town of Phillipsburg, 181 N.J. Super. 109, 113, 436 A.2d 944 (App.Div. 1981) (police officer can be compelled to cooperate with official investigation under penalty of loss of job if statements to investigators are immunized).
Applying these principles to the specific question raised on this appeal, we conclude that the New Jersey juvenile waiver statute can be construed to protect the privilege against compelled self-incrimination. The text of N.J.S.A. 2A:4A-26(a)(3) neither compels a juvenile to testify at a waiver hearing nor requires an admission of guilt by the juvenile, or any witness on his behalf, as a pre-condition for the case remaining in the Family Part. The statute does not explicitly force the juvenile to make a choice, as did the statutes which were stricken in the so-called "penalty cases." See, e.g., Lefkowitz v. Turley, supra, 414 U.S. at 71-72, 94 S.Ct. at 320-21, 38 L.Ed.2d at 279 (unconstitutional choice between testifying at state hearings on corruption in public contracting and *208 losing existing and future public contracts). In contrast, the waiver statute requires only that the juvenile prove, by whatever means chosen, the "probability of rehabilitation" before age nineteen, utilizing the resources available to the court. In the present case, the juvenile presented the testimony of his mother and of a board-certified neuropsychiatrist, Dr. Rushton. The juvenile also testified, but mostly about the events of the night of the alleged crime. His own testimony did not bear particularly on his potential for rehabilitation.
We are not convinced that in all cases a juvenile can meet the burden of proof only by admitting wrongdoing. The particular facts of each case determine the nature of the proofs. Generalizations are not particularly useful. Evidence demonstrating the probability of rehabilitation may be presented by a juvenile or witnesses without necessarily admitting guilt. There could be testimony by experts that the juvenile has the ability and inclination to comply with the law, wishes to do so, and will probably do so in the future if guided through a particular program of education and counseling; testimony by psychiatric experts that even if the juvenile is guilty of the offenses charged, that juvenile is not likely to repeat the aberrant behavior, as was presented in the case before us; and testimony of teachers, counselors, and clergy that the juvenile has displayed good character and maturity in the past and will likely do so in the future, if given proper training and guidance.
Even assuming that an admission of guilt is implicitly required in order for the juvenile to have a chance to remain in family court, this admission has no adverse legal consequences. The juvenile's testimony is fully immunized by N.J.S.A. 2A:4A-29. He is not penalized in any sense by choosing to admit guilt at a waiver hearing. See State v. Ferguson, supra, 255 N.J. Super. at 538, 605 A.2d 765 (noting that N.J.S.A. 2A:4A-29 "takes much of the risk out of the decision to testify at the transfer hearing").
There are no Fifth Amendment concerns where the threat of self-incrimination is removed by a grant of immunity. Cf. *209 Garrity v. New Jersey, 385 U.S. 493, 495-96, 87 S.Ct. 616, 617-18, 17 L.Ed.2d 562, 564-65 (1967) (choice between self-incrimination or job forfeiture was coerced in the absence of a grant of immunity); See In re Guarino, 104 N.J. 218, 228-29, 516 A.2d 1063 (1986) (production of documents did not violate defendant's Fifth Amendment privilege against self-incrimination where defendant was granted immunity); State v. Doliner, 96 N.J. 236, 250, 475 A.2d 552 (1984) (grand jury witness has no right to remain silent once immunity is granted); In re Tuso, 73 N.J. 575, 580-81, 376 A.2d 895 (1977) (conclusive presumption that non-target witness granted immunity under statute has full protection against self-incrimination under Fifth Amendment and corresponding state common-law privilege and has not been stripped of his constitutional right to remain silent); Banca v. Phillipsburg, supra, 181 N.J. Super. at 113, 436 A.2d 944 (if public employee is "protected from the normal consequences of a self-incriminatory statement [by use immunity] ... then the choice he must make between loss of his employment and the giving of the statement, however much of a Hobson's choice it may be, does not offend his constitutional privilege[]").
The situation facing a juvenile at a Phase II hearing is somewhat analogous to the situation facing defendants who are offered plea bargains, a constitutionally-permissible practice. Corbitt v. New Jersey, supra, 439 U.S. at 216, 99 S.Ct. at 496, 58 L.Ed.2d at 472-73. The juvenile is merely faced with a choice and may voluntarily elect to waive the privilege in exchange for the possibility of favorable treatment. Moreover, the juvenile is clearly in a much better position than a plea-bargaining defendant, whose admission of guilt automatically results in a criminal conviction. Rather than confronting this onerous choice, a juvenile's decision to admit guilt at a Phase II hearing is really risk-free. There is no adjudication of guilt involved, and the testimony cannot be used to later incriminate him. It is inadmissible "for any purpose in any hearing to determine delinquency or guilt...." N.J.S.A. 2A:4A-29.
*210 The federal Supreme Court has consistently held that the offer of a lower sentence or more lenient treatment in exchange for a guilty plea does not impermissibly coerce a defendant to waive the Fifth Amendment privilege. Likewise, the offer of more lenient treatment, remaining in the Family Part, in exchange for the juvenile's admission of guilt and remorse, especially where the admission has no adverse legal consequences, does not violate the juvenile's self-incrimination rights.
In Commonwealth v. Wayne W., supra, 606 N.E.2d 1323, the juvenile challenged a waiver provision similar to New Jersey's. The Massachusetts statute excluded certain serious offenses from juvenile jurisdiction, and established a presumption of transfer which the juvenile could rebut at a "Part B" hearing, equivalent to our Phase II hearing. One of the constitutional issues on appeal was a Fifth Amendment challenge, i.e., whether the state could compel the juvenile to submit to examination by a state psychiatrist for use at the "Part B" hearing, and force him to give testimony against his own interests. The court held that if the juvenile chose to submit psychiatric testimony of his own at the hearing, he could be compelled to submit to a psychiatric examination ordered by the state. Id. at 1331.
In so doing, the Massachusetts Supreme Judicial Court rejected the juvenile's argument that he had no alternative but to offer psychiatric testimony in order to avoid transfer, and that his choice was not really a choice at all, but a coerced waiver of his Fifth Amendment privilege. The court made these pertinent observations:
We agree that a juvenile in a Part B hearing will often desire to present psychiatric evidence. The juvenile who does so has made a voluntary choice. There are other sources of probative evidence available to the juvenile, bearing on his dangerousness to the public and amenability to treatment, that may be introduced without implicating the privileges against self-incrimination. These include, but are not limited to, records of past treatment, school and probation records, Department of Youth Services records, Department of Social Services records, and testimony by a probation officer, Department of Social Services or Youth Services employees, teachers, friends, or family members.
[Ibid.]
*211 A.L. claims that he is tacitly admitting guilt if he presents any evidence as to the likelihood of rehabilitation, since rehabilitation logically assumes guilt. Accepting this premise as true, we still fail to grasp how it supports the juvenile's Fifth Amendment argument. The Fifth Amendment is triggered only where there is a threat of compelled self-incrimination. The fact that a juvenile presents evidence of amenability to rehabilitation at a waiver hearing is not legally relevant to prove his guilt in subsequent proceedings. Thus, whatever the logical inference between guilt and amenability to rehabilitation, there is no legally significant inference of guilt created. Where there is no potential for self-incrimination, there is no Fifth Amendment concern.
A.L.'s final argument on this point concerns the scope of the immunity conferred by N.J.S.A. 2A:4A-29. He contends that this provision is facially deficient and unconstitutional because it is limited to "use immunity" and does not encompass derivative use of testimony given at the waiver hearing.
Initially, the federal Supreme Court held that use immunity may not be sufficiently protective of the Fifth Amendment privilege. Instead, the Court held that testimony may be compelled only where there is "transactional immunity," i.e., absolute immunity from future prosecution for the offense to which the testimony relates. See Counselman v. Hitchcock, 142 U.S. 547, 562-67, 12 S.Ct. 195, 198-200, 35 L.Ed. 1110, 1114-15 (1892). However, in Kastigar v. United States, supra, 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222, the Court modified Counselman's holding and sanctioned a statute which granted "use and derivative use immunity." This less restrictive form of immunity bars the State from using both the compelled testimony and any evidence developed as a result of such testimony. In so ruling, the Court explained:
While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader.... The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted.... It prohibits the prosecutorial authorities from using the compelled testimony in *212 any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness. [Ibid.]
A.L. contends that a grant of "use and derivative use" immunity is needed to ensure that a juvenile is fully protected if he testifies at a Phase II waiver hearing. In support of his argument, A.L. notes that both N.J.S.A. 2A:81-17.3[3] (general witness immunity statute) and N.J.S.A. 52:9M-17(b)[4] (immunity statute for persons called to testify before State Investigation Commission) specifically confer the broader "use and derivative use" immunity. He argues that since this broader measure of immunity is not textually available to a juvenile testifying at a Phase II waiver hearing, he is not adequately protected.
Clearly, N.J.S.A. 2A:4A-29 does not mention "derivative use" immunity. The statute simply says: "No testimony of a juvenile at a hearing pursuant to section 7 [N.J.S.A. 2A:4A-26] or 8 [N.J.S.A. 2A:4A-27] shall be admissible for any purpose in any hearing to determine delinquency or guilt of any offense." Id.
We conclude, with the guidance of State v. Patton, 133 N.J. 389, 627 A.2d 1112 (1993) (4-3 decision), that the constitutionality of N.J.S.A. 2A:4A-26 may readily be preserved by quite modest judicial surgery. In Patton, the Supreme Court engrafted both use and derivative use immunity on N.J.S.A. 2C:35-10(c), a statute which imposed criminal liability as a disorderly person upon any person who possesses illegal drugs and "who fails to voluntarily deliver the substance to the nearest law enforcement officer...." Id. The Supreme Court found that the statute, as enacted, obviously conflicted with a defendant's federal and state privileges against self-incrimination. The Court said that "[n]evertheless, we construe N.J.S.A. 2C:35-10c to confer use and derivative-use immunity on any person who complies with that subsection [and surrenders drugs to the police]." Patton, supra, 133 N.J. at 391, 627 A.2d 1112.
*213 The Patton majority stressed "the hesitancy of our courts to invalidate statutes on constitutional grounds." Id. at 398, 627 A.2d 1112. The Court's majority settled on "a construction that preserves the intention of the Legislature and does not compromise the privilege against self-incrimination." Ibid. To quote Patton, "absent a clear indication to the contrary," we assume that the Legislature enacted N.J.S.A. 2A:4A-29 "with an understanding of the contours of the privilege against self-incrimination." Patton, supra, 133 N.J. at 402, 627 A.2d 1112. Based on that assumption, we are confident that engrafting derivative use immunity onto the use immunity already conferred specifically by the statute "is consistent with and furthers the legislative goals embodied in the statute." Id. at 402, 627 A.2d 1112. Indeed, our judicial surgery here is far less radical than that performed by the majority in Patton because N.J.S.A. 2C:35-10(c) made no mention of any kind of immunity. See also State v. Lagares, 127 N.J. 20, 32, 601 A.2d 698 (1992); Right to Choose v. Byrne, 91 N.J. 287, 311, 450 A.2d 925 (1982) ("In appropriate cases, ... a court may engage in `judicial surgery' to excise a constitutional defect or engraft a needed meaning."); State v. Zito, 54 N.J. 206, 218, 254 A.2d 769 (1969). As so construed to provide both direct use and derivative use immunity, we uphold N.J.S.A. 2A:4A-29 in the face of this constitutional challenge. The accused juvenile has the right to testify at the waiver hearing and resist referral to adult court without the peril that his testimony or its fruits may be used against him "for any purpose in any hearing." Id.
Finally, we have carefully reviewed the testimony of Dr. Rushton and A.L.'s mother offered to satisfy the juvenile's burden under the statute that the probability of rehabilitation before age nineteen outweighs the reasons for waiver and the seriousness of the crime. N.J.S.A. 2A:4A-26(a)(3). We agree with Judge Serata "that the juvenile failed to meet his burden of proof" by his offer of "a vague plan of rehabilitation by psychiatric therapy." As our Supreme Court has said, the "evidential axis," has been "heavily *214 tilted by the Legislature in favor of waiver." State v. R.G.D., supra, 108 N.J. at 12, 527 A.2d 834.
Affirmed.
NOTES
[1] See R. 2:2-4; State in Interest of R.L., 202 N.J. Super. 410, 495 A.2d 172 (App.Div.), certif. denied, 102 N.J. 357, 508 A.2d 226 (1985).
[2] N.J.S.A. 2A:4A-26(a)(3) states in pertinent part:

However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.
[3] "or any information directly or indirectly derived from such testimony."
[4] "or evidence derived therefrom."