266 N.J. Super. 522 (1993)
630 A.2d 328
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT LACAILLADE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1993.
Decided July 28, 1993.
*524 Before Judges KING, BRODY and LANDAU.
Thomas A. DeSimone, Assistant Prosecutor, argued the cause for appellant (Michael Brooke Fisher, Cumberland County Prosecutor, attorney; Mr. DeSimone, on the letter brief).
John L. Call, Jr., argued the cause for respondent (Call & Covert, attorneys; Mr. Call, on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
We granted the State leave to appeal from an order suppressing incriminating oral statements that defendant, then a Millville police sergeant, made while being questioned by a Millville police *525 lieutenant. The order also suppressed defendant's later repetition of the statements to the Millville police chief. The questioning related to events which form the factual basis for the charges in the present indictment.[1] The judge found that the statements were inadmissible because they were given during a custodial interrogation at which the Miranda warnings had not been administered. We disagree and reverse.
On January 31, 1992, while on routine patrol in his police car, defendant signalled a vehicle to stop that was being operated by Tyrone Blake, the subject of outstanding arrest warrants. Blake did not stop and defendant gave chase. The chase ended when Blake's vehicle crashed into a fence. Blake then exited the vehicle and fled on foot. He was soon caught and arrested. Sometime after Blake had left his vehicle, defendant's service revolver discharged.
Defendant filed a report in which he stated that after Blake left his vehicle he struck defendant in the face, knocking him to the ground. Defendant claimed that as he was falling he drew the weapon, which accidentally discharged when he hit the ground. Consistent with his report, defendant made a formal complaint against Blake charging him with assault. Defendant repeated that story to Lt. Ronald Harvey, who routinely conducts an investigation whenever a police officer discharges a weapon while on duty.
Blake, however, thereafter told Lt. Harvey a different story. According to Blake, defendant had drawn and fired his weapon during the foot chase. Blake submitted to a polygraph test, which *526 indicated that he was telling the truth. Lt. Harvey decided to interview defendant and confront him with Blake's story and the results of the polygraph test.
On February 6, at about 11:30 p.m., defendant showed up at police headquarters to begin his tour of duty. His first task as sergeant was to brief the officers on the shift. Lt. Harvey asked defendant to come to his office after the briefing. Defendant and Lt. Harvey were then alone together for about an hour. The transcript of Lt. Harvey's testimony at the suppression hearing is the only evidence of what happened and what was said at this meeting. No audio tape of the interview was made and defendant did not testify at the hearing.
Lt. Harvey testified that as he saw it, he was conducting a departmental investigation and not a criminal investigation. He acknowledged that he did not administer the Miranda warnings. However, at no time during the interview did he threaten defendant with loss of his job, tell defendant he had to stay in the room, or relieve defendant of his weapon. He simply confronted defendant with Blake's story and the result of Blake's polygraph test. Defendant then admitted to him that Blake's story was true.
Lt. Harvey testified that at some point during the interview, he did not recall whether it was before or after the admission, defendant asked whether "he was [was] going to lose his job, was he going to be demoted or anything like that and I  and I recall telling him that that's not my decision to make, that the chief or the director of public safety could only make that decision." In the February 10 report of his investigation, Lt. Harvey recommended that defendant receive a demotion and a thirty-day suspension.
There is no doubt, as the trial judge found, that Lt. Harvey was compassionate with defendant. Indeed, during the questioning Lt. Harvey offered to arrange psychological counselling for defendant, but defendant believed that the chief would not agree. Lt. Harvey told defendant to take off the rest of the night and meet the following morning in the chief's office to discuss the matter *527 with him. The next morning, defendant repeated his admissions to the chief, again without having been given the Miranda warnings. The chief agreed that psychological counseling was indicated and Lt. Harvey set up an appointment for that same morning. Defendant was not suspended until the county prosecutor decided to proceed with a criminal complaint on February 21.
Focusing on whether defendant's statements were made during a "custodial" interrogation, the trial judge made the following findings leading to his order:
And while it is true that Lt. Harvey did not remove his weapon from him and, according to Lt. Harvey, Sgt. Lacaillade was free to move, it is clear that the actions of Lt. Harvey, especially after telling Sgt. Lacaillade about the polygraph results and taking into consideration the surrounding circumstances, fairly construed, that that would reasonably lead Sgt. Lacaillade to believe that he could not leave freely.
And, with that, as I understand the case law, he would have been considered, quote, "in custody," unquote, and the Miranda warnings should have been administered. They were not and, as a result, the State is precluded from using in its case-in-chief any statements made that night by Sgt. Lacaillade to Lt. Harvey or that same morning  the same morning, but later that morning in the meeting between and among Sgt. Lacaillade, Chief Herman and Lt. Harvey.
In neither the proceedings below nor on appeal does defendant contend that he should have been given Miranda warnings because he had been subjected to a "custodial" interrogation. The mere fact that defendant was being questioned in the offices of his superiors, who happen to be police officers, does not render the interrogation custodial. Where, as here, a suspect has no reason to believe that he has been deprived of his freedom during an interrogation, the interrogation is not custodial:
Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person's *528 freedom as to render him "in custody." It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.
Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977).
Although the questioning was not environmentally coercive, defendant's statements may nevertheless be inadmissible because of another form of unconstitutional coercion. Even where a police interrogator is not obliged to give Miranda warnings, the person being questioned retains his or her constitutional right to remain silent rather than give an answer that may be incriminating. Law enforcement officers may not attach a penalty to the exercise of that right by a public employee through the threat of dismissal. Thus where a police officer's answers to police questioning are coerced by the threat of removal from office, the answers are not admissible unless the officer waives his or her constitutional right to remain silent. "We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562, 567 (1967). N.J.S.A. 2A:81-17.2a2.
Fear that loss of employment will result from the exercise of the constitutional right to remain silent must be subjectively real and objectively reasonable. United States v. Friedrick, 842 F.2d 382, 395 (D.C. Cir.1988). These two prongs of the test are more fully described in United States v. Camacho, 739 F. Supp. 1504, 1515 (S.D.Fla. 1990):
First, the defendant must have subjectively believed that he was compelled to give a statement upon threat of loss of job. Second, this belief must have been objectively reasonable at the time the statement was made.
Here, in the absence of testimony by defendant, we would have to speculate as to whether defendant answered Lt. Harvey's questions because he subjectively believed that he would be fired if he remained silent. Defendant makes much of the fact that Lt. Harvey's request to give a statement was an "order" in view of his *529 superior position in the police chain of command. Even so, the question remains, what did defendant believe to be the consequence of disobeying the order? There is evidence that defendant asked Lt. Harvey, either before or after he made the incriminating statements, what the consequence of his answers would be. The question, however, is not what the consequence of giving the answers would be but rather the consequence to defendant of disobeying the order to answer by exercising his constitutional right to remain silent.
Even if there were evidence that defendant subjectively believed that he would be removed if he refused to answer, there is no evidence that such a belief would have been reasonable. Rule 8.1.28 of the Millville Police Department Rules and Regulations provides the following sanctions for "Refusal to obey proper orders from a Superior":
1st Offense: Reprimand to 15 days
2nd Offense: Reprimand to Dismissal
3rd Offense: Dismissal
The only specific reference in the Rules to sanctions for refusing to cooperate with a departmental investigation is made in a passing comment under the heading "Member's Rights During Departmental Investigations and Disciplinary Hearings." Rule 8.4.7 provides in relevant part:
Although cooperation of a member is demanded under threat of disciplinary action (including job forfeiture) said member shall not be questioned or subjected to investigative efforts under circumstances which would render such statements void as being coerced.
The reference to job forfeiture as a possible sanction appears to be no more than a reference to dismissal under Rule 8.1.28 for repeated refusals to obey orders. In any event, Rule 8.4.7 does not mandate job forfeiture as the price for exercising the constitutional right to remain silent. Therefore, Garrity does not apply. United States v. Indorato, 628 F.2d 711, 715-16 (1st Cir.1980), cert. denied, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980).
Defendant's final argument is that his statements must be suppressed because by not first administering the Miranda warnings, *530 Lt. Harvey violated Police Rules that mandate suppression. Rule 8.4.10 provides:
Under circumstances where the alleged violation of department rules and regulations involves or could possibly involve criminal prosecution, the member shall be advised of his constitutional right against self-incrimination (Miranda Warning) which he may invoke with respect to possible criminal prosecutions. However, he must respond with respect to the administrative subject matter of the inquiry.
Rule 8.4.11 provides:
All evidence obtained as a result thereof accordingly could not be used in a subsequent criminal prosecution, but would be admissible during a departmental disciplinary hearing.
The Rules, by their terms applicable to all cases, correctly describe the legal effect of only those cases in which statements are obtained under threat of dismissal and thereby become immunized from use in criminal proceedings. See Banca v. Phillipsburg, 181 N.J. Super. 109, 436 A.2d 944 (App.Div. 1981). As we previously discussed, this is not such a case.
Lt. Harvey testified that he was unaware of these particular Rules. There is no evidence that defendant was aware of them, much less that he gave his statements in reliance on the Rules' promise that the statements would not be used in a subsequent criminal prosecution.
Reversed and remanded for further proceedings.
NOTES
[1] The indictment charges defendant with six crimes: second-degree official misconduct, a violation of N.J.S.A. 2C:30-2a; fourth-degree falsifying records, a violation of N.J.S.A. 2C:21-4a; fourth-degree false swearing, a violation of N.J.S.A. 2C:28-2a; fourth-degree falsely incriminating another, a violation of N.J.S.A. 2C:28-4a; fourth-degree making a false record with the purpose to mislead a public servant engaged in an investigation, a violation of N.J.S.A. 2C:28-6(2); and third-degree making a false entry in a governmental record, a violation of N.J.S.A. 2C:28-7(a)(1).