## A00A0380. THE STATE v. STINSON.
(536 SE2d 293)

BARNES, Judge.

The State appeals from the trial court's grant of James Terry Stinson's motion to suppress two videotaped interviews.[1] Because we find the trial court erred in applying *Garrity v. New Jersey*, 385 U. S. 493 (87 SC 616, 17 LE2d 562) (1967) and *Kastigar v. United States*, 406 U. S. 441 (92 SC 1653, 32 LE2d 212) (1972) to the facts of this case, we reverse.

The record shows that the interviews at issue resulted from a citizen's complaint that Stinson, a Gwinnett County police officer, sexually assaulted her and forced her to perform oral sex while on duty. Gwinnett County Police Officers Toney and Wilson testified in the motion to suppress hearing. Officer Toney interviewed Stinson on February 17, 1998, and Officer Wilson interviewed him three days later, on February 20, 1998. Stinson did not testify at the motion to suppress hearing.

Officer Toney testified that at the time of the February 17, 1998 interview, he was working in the Criminal Investigations Division, which was not a part of internal affairs. As he did not know Stinson, he arranged an interview through Stinson's supervisor to investigate the citizen's complaint. Specifically, Stinson's supervisor asked him to report to the southside precinct on his day off to participate in a robbery stakeout with Officer Toney. When Stinson arrived, Toney, along with another officer, informed Stinson that there was no robbery stakeout and that he had been asked to report because of a complaint about sexual indiscretion during a call three days earlier. They asked Stinson if he would accompany them to headquarters to talk about the complaint, and he agreed. Before driving to headquarters, they also asked Stinson, who was in uniform, to place his weapon in the trunk of their car, and he agreed to do so. Officer Toney testified that he did not order Stinson to give him his weapon.

When they arrived at headquarters approximately 30 minutes later, they went into an interview room and started discussing the details of the call and the citizen's possible motivation for making a complaint against Stinson. This interview was videotaped without Stinson's knowledge or consent. Stinson was never told before or during the interview that he was under arrest or in custody. He was not handcuffed, and *Miranda* warnings were not given to him. According to Officer Toney, Stinson was not under arrest and would have been free to go if he had made such a request, but he did not. Officer Toney did not inform Stinson before or during the interview that he was

---

[1] Stinson was indicted for one count of aggravated sodomy, five counts of sexual battery, and one count of violation of an oath by a public officer.

conducting a criminal investigation.

Officer Wilson testified that he and another officer interviewed Stinson on February 20, 1998. The interview resulted from a request by Stinson to talk with them about the citizen's complaint. The interview was again videotaped without Stinson's knowledge. At the beginning of the videotaped interview, Officer Wilson told Stinson he was working on a criminal investigation and gave him the *Miranda* warnings.

During cross-examination, Officer Wilson acknowledged that before the February 20, 1998 interview with Stinson, he had watched the first videotaped interview and talked with Officer Toney about it. He also acknowledged that he used this information to formulate his questions to Stinson.

Both police officers testified that all officers are given a copy of the Gwinnett County Police Department's internal orders and procedures manual and are expected to know its contents.

The trial court granted Stinson's motion to suppress both videotaped statements based upon these officers' testimony, its review of the videotaped interviews, and the following internal general orders of the Gwinnett County Police Department:

> Gwinnett County Police Department's own internal General Order No. 111.01 and 111.02 provide that complaints of misconduct involving allegations of criminal violations will be investigated by the Professional Standards Unit of the Police Department. Gwinnett Police Department General Order No. 111.05 provides that, "in serious cases that involve the public interest or which may bring the agency into disrepute, the accused employee may be questioned during non-working hours." General Order No. 111.05 provides that employees are expected to answer questions or submit materials and statements to the investigator when so directed. Failure to answer questions may result in disciplinary action.
>
> . . .
>
> Gwinnett County Police General Order No. 111.05 . . . imposes a duty on internal affairs investigators to do the following: "Prior to being interviewed, the employee should be advised of who is investigating the complaint. The employee will be advised as to whether the investigation is administrative in nature."

The trial court concluded that the first videotaped statement should be suppressed because it was "likely and reasonable to conclude that

the Defendant believed that this was an administrative interview that he must cooperate in. . . ." As a result, the trial court reasoned, the statement was obtained through the type of coercion prohibited by the United States Supreme Court in *Garrity*, supra. The trial court then suppressed the second statement because it was tainted by the first compelled statement. See *Kastigar*, supra.

On appeal, we review a trial court's application of the law to undisputed facts when ruling on a motion to suppress de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). In this case, the trial court's decision to grant the motion to suppress hinges upon its interpretation of *Garrity*, supra.

In *Garrity*, New Jersey police officers were investigated for allegedly fixing traffic tickets. The officers were informed that they could exercise their Fifth Amendment privilege against self-incrimination if they wished, but doing so would cost them their jobs under a New Jersey statute which required all public employees to cooperate with investigations or forfeit their positions. The officers cooperated with the investigation but were prosecuted. They moved to suppress their statements as involuntary and coerced. The Supreme Court held that "statements obtained under threat of removal from office" cannot be used in subsequent criminal proceedings and reversed the New Jersey Supreme Court's decision allowing the officers' statements into evidence. *Garrity*, supra, 385 U. S. at 499.

Since the Supreme Court's decision in *Garrity*, federal and state courts asked to apply its holding to the facts before them have developed two distinct lines of authority, one requiring an explicit threat of termination and mandatory termination for a failure to cooperate and the other requiring an objectively reasonable, subjective belief on the part of the officer that he must answer questions or lose his job.

The first line of authority evolved from *United States v. Indorato*, 628 F2d 711 (1st Cir. 1980).[2] In *Indorato*, the First Circuit noted that

> [i]n all of the cases flowing from *Garrity*, there are two common features: (1) the person being investigated is *explicitly* told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment (or a similarly severe sanction imposed in the case of private citizens); and (2) there is a statute or municipal ordinance *mandating* such procedure.

---

[2] See, e.g., *People v. Coutu*, 235 Mich. App. 695 (599 NW2d 556, 561) (1999); *United States v. Johnson*, 1997 U. S. App. LEXIS 36363 (2nd Cir. 1997); *People v. Bynum*, 159 Ill. App.3d 713 (512 NE2d 826, 827) (1987); *Commonwealth v. Harvey*, 397 Mass. 351 (491 NE2d 607) (1986).

(Emphasis supplied.) Id. at 716. It then rejected a police officer's claim that *Garrity* should be applied to exclude a statement coerced by an *implied* threat, specifically police department rules requiring an officer to obey a lawful order of his superiors or face disciplinary action, including dismissal. Id. The First Circuit concluded that *Garrity* did not apply because the police officer was never expressly told that he would be dismissed if he failed to answer questions and no statute mandated dismissal if he refused to answer questions. Id.

The second line of authority stems from *United States v. Friedrick*, 842 F2d 382 (D.C. Cir. 1988).[3] In *Friedrick*, the D. C. Circuit held that statements should be excluded under *Garrity* if (1) the defendant subjectively believes that he must answer questions or lose his job, and (2) this subjective belief is objectively reasonable. *Friedrick*, supra, 842 F2d at 395. Courts applying the *Friedrick* analysis emphasize that a subjective belief cannot be considered objectively reasonable unless it is based upon actions taken by the state. See, e.g., *United States v. Camacho*, 739 FSupp. 1504, 1515 (S.D. Fla. 1990). In other words, the state must play a role "in creating the impression that the refusal to give a statement will be met with termination of employment." *Colorado v. Sapp*, 934 P2d 1367, 1373 (Col. 1997).

In this case, the trial court erred by applying *Garrity* to exclude the first videotaped statement whether we adopt the *Indorato* analysis or the *Friedrick* analysis. No evidence establishes the *Indorato* requirement of an overt threat to terminate Stinson's employment or the *Friedrick* requirement that Stinson subjectively believed he would be terminated if he failed to answer questions. See *State v. Lacaillade*, 266 N.J. Super. 522 (630 A2d 328, 332) (1993) (subjective belief requirement of *Friedrick* analysis not met in the absence of testimony by the defendant). Thus, we need not choose which analysis should have been applied by the trial court.

Because the trial court erred by excluding the first statement under *Garrity*, it also erred when it excluded the second statement based upon a *Kastigar* taint analysis.

*Judgment reversed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED JUNE 26, 2000 

*Daniel J. Porter, District Attorney, George F. Hutchinson III,*

---

[3] See, e.g., *People v. Sapp*, 934 P2d 1367, 1373 (Col. 1997); *State v. Lacaillade*, 266 N.J. Super. 522 (630 A2d 328, 332) (1993); *State v. Connor*, 124 Idaho 547 (861 P2d 1212, 1214) (1993); *United States v. Camacho*, 739 FSupp. 1504, 1514 (S.D. Fla. 1990).

*Assistant District Attorney*, for appellant.

*Chandler & Britt, Walter M. Britt, Deborah F. Weiss*, for appellee.