■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PATRICIA SMITH, Respondent. [814 NYS2d 360]—

Lahtinen, J. Appeal from an order of the County Court of Cortland County (Campbell, J.), entered February 28, 2005, which granted defendant's motion to suppress written and oral statements.

This appeal involves whether certain statements made by defendant, a police officer in the Cortland County Sheriff's Department, to her supervisor were protected under the constitutional right against self-incrimination. Defendant's conduct following her investigation of a complaint regarding the alleged sale of a small amount of marihuana in September 2003 eventually resulted in a multicount indictment in April 2004 charging her with, among other things, falsifying business records, offering a false instrument for filing, and tampering with physical evidence. Defendant moved to suppress written and oral statements she gave to her supervisor in the Sheriff's Department when he inquired about her actions in handling the marihuana matter.

Evidence at the suppression hearing established that on September 1, 2003, defendant was dispatched to a local residence to investigate a complaint about the possible sale of marihuana, where she spoke to a couple of juveniles who had been approached by someone with marihuana, and she observed a substance left at the scene by the seller. She allegedly gathered the substance, but later discarded it because of the small quantity. On September 2, 2003, defendant's supervisor, Sergeant Herbert Barnhart, reviewed the dispatch complaint form that defendant had prepared and he noted several matters

that caused him concern, including that an incident report had not been filed. Defendant was on vacation from September 2-6, 2003 and, during that time, Barnhart learned that defendant may have taken possession of some evidence at the scene and he was not able to determine what defendant did with that evidence. He notified an internal affairs officer of this.

According to Barnhart, he asked defendant when she returned to work on September 7, 2003 whether there was any evidence. She initially stated that there was not, but then indicated that there had been some ashes and an amount of a leafy green substance that was too small for her to secure. Barnhart stated that he was primarily interested in determining whether a case could still be made against the seller of the marihuana; he acknowledged that he was aware that defendant may have violated department procedures, but he claimed he had no belief at that time that defendant had committed a crime. He directed her to file the incident report that should have accompanied the initial paperwork regarding the marihuana investigation. She provided it to him shortly thereafter and, after reading it, he handed it back to her and indicated that she had failed to include in the report what she did with the evidence at the scene. Defendant revised the report and returned it to him.

Barnhart testified that he never stated to defendant that she would be fired if she did not answer his questions or provide the report. He acknowledged that he was defendant's supervisor and that it would be a violation of the department's policies for her to refuse his directive. He stated that there was a wide range of possible disciplinary actions for insubordination, including dismissal. Following the hearing, County Court determined that defendant's statements were made in response to inquiries from her supervisor that she was required to answer or face disciplinary action, including termination, and, therefore, the statements were not voluntary under *Garrity v New Jersey* (385 US 493 [1967]) and its progeny. The People appeal pursuant to CPL 450.20 (8).

A governmental entity " 'may compel any person enjoying a public trust to account for his [or her] activities and may terminate his [or her] services if he [or she] refuses to answer relevant questions, or furnishes information indicating that he [or she] is no longer entitled to public confidence' " (*Matter of Matt v Larocca*, 71 NY2d 154, 159-160 [1987], *cert denied* 486 US 1007 [1988], quoting *People v Avant*, 33 NY2d 265, 271 [1973]). The state or municipality cannot, however, present the person with a choice of either making an unimmunized statement implicating criminal conduct or suffering a severe penalty

such as termination. If a person faced with such a choice refuses to respond, the state cannot carry out its threatened penalty (*see Lefkowitz v Turley*, 414 US 70, 77 [1973]; *Matter of Mountain v City of Schenectady*, 100 AD2d 718 [1984], *lvs dismissed* 63 NY2d 603, 769 [1984], *lv denied* 64 NY2d 607 [1985]). If the person decides to talk, on the other hand, those coerced statements obtained under threat of removal from office cannot be used in any subsequent criminal proceedings against that person (*see Garrity v New Jersey, supra* at 500). Stated another way, "[u]nder both the State and Federal Constitutions, a statement made under threat of dismissal is protected by the privilege against self-incrimination and automatically immunized from use in criminal proceedings" (*People v Corrigan*, 80 NY2d 326, 329 [1992]).

The current case turns on whether defendant's statements were compelled, i.e., "made under threat of dismissal" (*id.* at 329). In formulating a test for what constitutes a compelled statement, some courts, following the teaching of *United States v Indorato* (628 F2d 711, 716-717 [1st Cir 1980], *cert denied* 449 US 1016 [1980]), require a showing that a defendant was explicitly made aware that discharge would result from a failure to cooperate (*see e.g. Orozco v County of Monterey*, 941 F Supp 930, 939 [ND Cal 1996]; *State v Litvin*, 147 NH 606, 608-609, 794 A2d 806, 808-809 [2002]; *People v Marchetta*, 177 Misc 2d 701, 708-709 [1998]; *see also United States v Johnson*, 131 F3d 132 [2d Cir 1997] [unpublished table decision], *cert denied* 523 US 1128 [1998]. Other courts have adopted a two-part test articulated in *United States v Friedrick* (842 F2d 382, 395 [DC Cir 1988]), in which the defendant must subjectively believe that termination could follow an assertion of the privilege and, importantly, that belief must be objectively reasonable under the circumstances (*see e.g. United States v Vangates*, 287 F3d 1315, 1321-1322 [11th Cir 2002]; *State v Chavarria*, 131 NM 172, 177, 33 P3d 922, 927 [2001]; *People v Sapp*, 934 P2d 1367, 1373 [Colo 1997]; *State v Lacaillade*, 266 NJ Super 522, 528, 630 A2d 328, 332 [1993]).

Here, defendant's suppression motion fails under either test. It is undisputed that there was no explicit demand that defendant waive her rights or face an immediate severe sanction. Nor is there any evidence in this record that defendant subjectively believed she was being presented with a situation where she would be terminated if she asserted her constitutional privilege. Moreover, even if defendant satisfied the subjective element, the record does not reveal objectively reasonable circumstances to support such a belief. Barnhart asked her to complete a report

that normally would have accompanied the initial paperwork regarding the marihuana investigation. He testified that, when he asked for that report, he did not believe a crime by defendant was implicated. Instead, he was primarily attempting to see if the marihuana case could be salvaged. Although he was aware that defendant may have violated department policies, he never threatened her with termination and, in fact, stated that he did not have the authority to terminate her. Nor was it established that termination would have necessarily followed if she had not provided the requested reports. There was a wide range of potential disciplinary penalties available to the Sheriff.

Crew III, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is reversed, on the law, motion denied, and matter remitted to the County Court of Cortland County for further proceedings not inconsistent with this Court's decision.