[840 NYS2d 828]

Police Benevolent Association of New York State Troopers, Inc., et al., Respondents, v Division of New York State Police et al., Appellants.

Third Department, July 26, 2007

## APPEARANCES OF COUNSEL

*Andrew M. Cuomo, Attorney General,* Albany (*Victor Paladino* of counsel), for appellants.

*Gleason, Dunn, Walsh & O'Shea,* Albany (*Mark T. Walsh* of counsel), for respondents.

## OPINION OF THE COURT

CARDONA, P.J.

This action was commenced by five State Troopers and their Police Benevolent Association (hereinafter PBA) seeking a declaration that all State Troopers and Officers employed by defendant Division of State Police have a right to counsel and union representation at all stages of a critical incident investigation. The Division's Administrative Manual presently defines a critical incident as, among other things, (1) "[a]ny action by a Member that results in serious physical injury or death to another person or the Member," (2) "[a]ny discharge of a firearm, except lawful destruction of an animal or the firing of signal or warning shots," or (3) "[a]ny traffic crash or incident involving a Division vehicle, aircraft or vessel which results in serious physical injury or death or substantial damage or potential civil liability." According to the Administrative Manual, "[i]n all critical incidents both a criminal and administrative investigation will be conducted." While the criminal investigation focuses on whether "the critical incident involved a violation of criminal statutes," the administrative investigation "focus[es] on the involved Member's compliance with Division Rules, Regulations and instructions."

Until 2002, the Administrative Manual provided that a Troop Critical Incident Officer (hereinafter CIO) would be designated to conduct the administrative investigation and, as part of that investigation, the involved member was required to respond to questions regarding the critical incident and provide a written memorandum to the CIO. The Administrative Manual also

provided that "[m]embers should not be precluded from contacting their collective bargaining representative" and, indeed, it was the Division's practice to allow members to consult with counsel or their union representative prior to answering questions or submitting a memorandum.

However, in 2002 the Division revised its protocols to prohibit such consultation. While a member was allowed to meet with counsel or a union representative prior to the initial inquiry into the facts of the critical incident, their role was limited to explaining the member's rights and the procedures to be used; private discussions were prohibited. The critical incident inquiry was to be conducted by a Staff Inspector who was also appointed to the Critical Incident Investigation Team charged with conducting the administrative investigation. Importantly, the protocols contained no restrictions on the use of the statements and memoranda provided by a member during this initial critical incident inquiry. Thus, the member's privilege against self-incrimination was potentially at risk should the matter proceed to disciplinary or criminal action.

In response to various PBA challenges to the 2002 revisions, the Division modified its protocols several times in order to insulate the initial inquiry from the administrative and criminal investigations to provide that a member is to be informed that his or her statements and memoranda will not be considered as admissions against interest in any subsequent disciplinary or criminal proceeding. According to the Division's most recent revision in 2005—the version at issue herein—a separate Staff Inspector is responsible for conducting the initial inquiry subject to section 16.1 (D) of the collective bargaining agreement (hereinafter CBA).[1] The initial inquiry is to be "completely isolated from the administrative investigation." The revised protocols

---

**1.** That section provides:

"Occasions will arise when there is a need for inquiry into a member's official actions or activities either as a principal or as a witness so that there will be a recording of facts, for the protection of the member or of the Division, or to rebut, explain or clarify any allegations, criticism or complaints made against a member of the Division. Under such circumstances members may be requested and are expected to properly respond and if requested, submit written memoranda detailing all necessary facts. Such memoranda will not be considered as admissions against self-interest in evidence submitted in a disciplinary proceeding under Rule 3 of the Rules, unless the member was offered the representation to which the member is entitled in an interrogation pursuant to paragraph 16.2A (8) below."

specify that the Staff Inspector conducting the initial inquiry and his or her support staff "will not participate in the administrative investigation at any point" and the individuals involved in the administrative investigation "will not have access to the Critical Incident Memorandum or any aspect of the 16.1D investigation" unless the member chooses to release the memorandum.

The individual plaintiffs herein were each subjected to an initial critical incident inquiry following their involvement in certain critical incidents. Although they asked to consult privately with counsel or a union representative, their requests were denied. All plaintiffs now seek a declaration of the rights of all PBA members to counsel or union representation in future inquiries. Specifically, in their complaint, plaintiffs contend that members have (1) a constitutional right to counsel at the initial inquiry because it has potential criminal ramifications and because the member is in custody at the time of the inquiry, (2) a statutory right to representation under Civil Service Law § 75, and (3) a right to representation under the Division's own Administrative Manual, which provides that members should not be precluded from contacting their union representative.

In their answer, defendants assert numerous affirmative defenses, including standing, justiciability, and that plaintiffs waived any right to representation at the initial inquiry through their CBA. In their subsequent motion for summary judgment they argued that the Division's protocols now isolate the initial critical incident inquiry from both the administrative and criminal investigations and preclude information obtained at the inquiry from being shared with anyone involved in those investigations. Plaintiffs cross-moved for summary judgment claiming, among other things, that defendants have violated their own protocols. They alleged, for example, that a member's memorandum was found in the file of a District Attorney who had unsuccessfully sought a grand jury indictment against that member (who is not a plaintiff here) and that another member's memorandum was used as a basis for questioning that member as part of the Division's disciplinary investigation of a critical incident. Moreover, they asserted that all members' memoranda are available to both the Division Counsel, who prosecutes disciplinary charges, and defendant Superintendent of the State Police, who ultimately imposes discipline and determines the penalty.

Supreme Court ruled in plaintiffs' favor, holding that plaintiffs have standing, that they are entitled to representation

pursuant to Civil Service Law § 75 (2), and that, pursuant to a recent determination of the Public Employment Relations Board, critical incident reviews are outside the scope of collective bargaining.[2] Accordingly, the court declared that defendants' "policy and practice . . . of denying members involved in critical incidents the right to consult with available counsel is illegal under Civil Service Law § 75 and members involved in critical incidents have the right to consult with counsel and union representatives prior to answering questions regarding their involvement in the critical incident." Defendants appeal.[3]

The threshold issue is whether plaintiffs have standing to challenge defendants' actions. To establish standing, "a plaintiff seeking to challenge governmental action . . . must show 'injury in fact,' meaning that [the] plaintiff will actually be harmed by the challenged administrative action. As the term itself implies, the injury must be more than conjectural" (*New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]; *see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772-773 [1991]). Most importantly, if the harm is not actual and present, the plaintiff must show that "it is reasonably certain that the harm will occur if the challenged action is permitted to continue" (*Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police*, 29 AD3d 68, 70 [2006]; *see New York State Assn. of Nurse Anesthetists v Novello, supra* at 214-215). Here, plaintiffs assert standing on two primary grounds: (1) in the criminal context they claim that defendants' policy of denying counsel to members during the initial critical incident inquiry violates members' constitutional right to counsel, and (2) in the disciplinary context they claim that denying members access to a union representative violates Civil Service Law § 75 (2).

Turning first to the criminal context, we note that in order to conclude that defendants' policy will actually harm members, we would be required to engage in at least two layers of specula-

---

**2.** That determination by the Public Employment Relations Board was since annulled (*Matter of Police Benevolent Assn. of N.Y. State Troopers, Inc. v New York State Pub. Empl. Relations Bd.*, Sup Ct, Albany County, May 31, 2007, Devine, J., index No. 7181-06). A notice of appeal from the judgment in this proceeding has been filed.

**3.** Defendants also appeal from Supreme Court's denial of their motion to reargue and/or renew. Because that motion principally alleged that Supreme Court had misconstrued the facts, it is properly treated as one to reargue, the denial of which is not appealable (*see Matter of King v Town Council of Coxsackie*, 35 AD3d 1120 [2006]).

tion: first, that defendants' policy is reasonably certain to result in violation of a member's right to counsel, and, second, that such a violation would be reasonably certain to result in criminal charges against that member. We recognize that New York's constitutional right to counsel has been interpreted more broadly than the federal right and attaches not only upon commencement of formal criminal proceedings, but also "where an uncharged individual has actually retained a lawyer in the matter at issue or, while in custody, has requested a lawyer in that matter" (*People v West*, 81 NY2d 370, 373-374 [1993]). However, plaintiffs have failed to demonstrate either that counsel provided by the PBA satisfies the "retained counsel" requirement or that initial critical incident inquiries invariably take place while the member is in custody. As to the latter, plaintiffs themselves concede that the situation surrounding each inquiry will be different and may shift during the course of the inquiry. Thus, the particular facts and circumstances of one member's initial inquiry may evolve into custodial interrogation, while another's may not. Notably, if the inquiry does take the form of an interrogation, the Administrative Manual provides that a member must be afforded "the same constitutional safeguards afforded any person deemed to be in police custody."

Even assuming that in a particular case the facts ultimately bear out plaintiffs' claim of a right-to-counsel violation, it does not necessarily follow that criminal charges will result. Indeed, since plaintiffs also concede that no member has yet been criminally charged based upon information obtained through an initial inquiry, we cannot conclude that such charges are "imminent and reasonably certain" to occur (*Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police, supra* at 70).[4]

Turning to the disciplinary context, Civil Service Law § 75 (2) provides, in relevant part, that "[a]n employee who at the time

---

**4.** If, in fact, such a situation arose, the trial court presented with the case would be called upon to determine whether the member's right to counsel was actually—rather than potentially—violated and, if so, would suppress the statement and its fruits. That court would also be in the best position to evaluate whether the member's statements were compelled in violation of his or her privilege against self-incrimination such that the doctrine of use immunity would preclude their use "in any subsequent criminal proceedings against [the member]" (*People v Smith*, 29 AD3d 1035, 1037 [2006], *lv denied* 7 NY3d 870 [2006]; *see Garrity v New Jersey*, 385 US 493, 500 [1967]; *Matter of Matt v Larocca*, 71 NY2d 154, 159-160 [1987], *cert denied* 486 US 1007 [1988]).

of questioning appears to be a potential subject of disciplinary action shall have a right to representation by his or her certified or recognized employee organization." Plaintiffs contend that this statute applies to its members and that defendants' policy of prohibiting members from privately consulting with a union representative before and during initial critical incident inquiries violates members' rights under the statute. Plaintiffs further contend that statements given at these inquiries are used in making decisions about whether to bring disciplinary charges, and could be used as evidence in subsequent disciplinary proceedings. It follows that in order for plaintiffs to establish the injury-in-fact necessary to confer standing under this theory, they must demonstrate both that Civil Service Law § 75 (2) applies to members at the time of an initial critical incident inquiry and that defendants' policy of prohibiting private consultation with a union representative is reasonably certain to result in harm to a member, such as disciplinary charges being brought on the basis of statements made at the initial inquiry.

Initially, we note that the question whether Civil Service Law § 75 (2) applies in these circumstances is not settled. We agree with plaintiffs and Supreme Court that a member who has been involved in a critical incident is "a potential subject of disciplinary action." However, the applicability of the statute at the initial inquiry stage hinges, at least in part, on whether the initial inquiry itself is deemed to be part of, or separate from, the disciplinary process (compare Matter of Police Benevolent Assn. of N.Y. State Troopers, Inc. v New York State Pub. Empl. Relations Bd., Sup Ct, Albany County, May 31, 2007, Devine, J., index No. 7181-06, with Matter of Police Benevolent Assn. of N.Y. State Troopers, Inc. v New York State Pub. Empl. Relations Bd., Sup Ct, Albany County, Dec. 29, 2006, Stein, J., index No. 2358-05).

Regardless of how this question may ultimately be answered, even if plaintiffs are correct in their contention that Civil Service Law § 75 (2) applies, they nonetheless lack standing in this case because they have not demonstrated that defendants' policy, as presently configured, is reasonably certain to result in disciplinary charges being brought against a member based on statements given during the initial critical incident inquiry. Indeed, to reach such a conclusion we would again have to engage in two layers of speculation: first, that defendants are reasonably certain to violate their own protocols by sharing the statements obtained as a result of the initial inquiry with those

individuals involved in the disciplinary investigation, and second, that such a violation will be reasonably certain to lead to the filing of disciplinary charges. We do not consider either of these circumstances to be reasonably certain to occur. Indeed, defendants have repeatedly, and, apparently in good faith, revised the critical incident protocols to insulate the initial inquiry from the administrative investigation, culminating in the 2005 revisions currently in place. We decline to speculate that defendants will now ignore those revised protocols. Moreover, although plaintiffs allege both that defendants have violated their critical incident policy in its earlier form and that, even under the 2005 revisions, both Division counsel and the Superintendent still have access to the initial critical incident memoranda, plaintiffs have *not* alleged that disciplinary charges have been brought against any member stemming from oral or written statements made as part of an initial critical incident inquiry. Accordingly, we cannot conclude that disciplinary charges are "imminent and reasonably certain" to result under the current protocols (*Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police, supra* at 70).

In sum, because plaintiffs herein have not shown that a continuation of defendants' policy is reasonably certain to result in actual harm to members in either the criminal or disciplinary context (*see Police Benevolent Assn. of N.Y. State Troopers, Inc. v New York State Div. of State Police*, 40 AD3d 1350, 1354 [2007]; *see also New York State Assn. of Nurse Anesthetists v Novello, supra* at 214-215), we conclude that plaintiffs lack standing to challenge defendants' current policy on those grounds.

The parties' remaining contentions have been considered and found to be either unpersuasive or academic.

CREW III, MUGGLIN, ROSE and LAHTINEN, JJ., concur.

Ordered that the order entered October 10, 2006 is reversed, on the law, without costs, plaintiffs' cross motion for summary judgment denied, defendants' motion for summary judgment granted and complaint dismissed.

Ordered that the appeal from the order entered November 29, 2006 is dismissed, without costs.