■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEOPOLD MCLEAN, Appellant. [10 NYS3d 277]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Griffin, J.), rendered June 13, 2013, convicting him of attempted murder in the second degree, reckless endangerment in the first degree, and reckless endangerment in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Blumenfeld, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

In 2010, the defendant, a New York City Police Department (hereinafter NYPD) detective, was in a relationship with Assia Winfield. At that time, Winfield had made numerous criminal complaints, and had obtained orders of protection, against an ex-boyfriend, LePaul Gammons, for stalking and harassing her. In the early morning hours of November 15, 2010, the defendant was sitting in his car outside Winfield's house when Winfield ran up and told him Gammons was there. The defendant got out of his car, drew his off-duty firearm, and fired several shots at Gammons as Gammons fled down the street on foot. A surveillance video recording recovered from a nearby home showed Gammons fleeing, and the defendant taking a "shooting stance" and firing in his direction. One of the shots struck Gammons in the buttocks, causing significant physical injury, but he managed to get away.

On the night of the incident, the defendant and Winfield called 911 to report a burglary, failing to mention that the defendant had fired his weapon. At trial, the People adduced evidence that, when asked by a detective at the scene whether he had discharged a weapon, the defendant denied having done so. Gammons did not report the incident until several days later, when he called the Civilian Complaint Review Board and sought treatment at a hospital. The ensuing investigation by the NYPD Internal Affairs Bureau resulted in the defendant being placed on modified assignment. An Internal Affairs Bureau team traveled to the defendant's home to inform the defendant that he had been placed on modified assignment, and to collect his firearms in accordance with procedures set forth in the NYPD Patrol Guide. The defendant allowed the team into his home and surrendered his firearms after being asked to do so.

The hearing court properly denied that branch of the defendant's omnibus motion which was to suppress the firearms removed from his home by the NYPD. The defendant contends that the warrantless removal of his firearms from his home violated his state and federal constitutional rights to be free

from illegal searches and seizures. "The Fourth Amendment prohibition against unreasonable searches and seizures is now prevalently understood to protect what an individual may legitimately expect to keep private against unwarranted intrusion by agents of the state" (*People v DeProspero,* 20 NY3d 527, 531 [2013], citing *Katz v United States,* 389 US 347, 351 [1967]). "It is, then, ordinarily elemental to the viability of a claim of a Fourth Amendment violation, that its proponent is able to allege a legitimate expectation of privacy in the places or items said to have been illegally searched or seized" (*People v DeProspero,* 20 NY3d at 531, citing *Rakas v Illinois,* 439 US 128, 148 [1978]; *see People v Scully,* 14 NY3d 861, 864 [2010]; *People v Ramirez-Portoreal,* 88 NY2d 99, 108 [1996]; *People v Di Lucchio,* 115 AD2d 555, 556 [1985]). Here, the evidence at the suppression hearing established that, as a member of the NYPD, the defendant would have been familiar with NYPD Patrol Guide Procedure No. 206-17, which relates to the removal of firearms from a uniformed member of the NYPD who, like the defendant, had been reassigned to nonenforcement duties for disciplinary reasons, the vouchering of those firearms into police custody, and the forwarding of those firearms to the Firearms Analysis Section, if warranted. Under these circumstances, any expectation of privacy the defendant might have had with regard to the firearms kept at his home, and the subsequent testing of them, would not have been reasonable.

Contrary to the defendant's contention, the admission of evidence at trial regarding his failure to report that he discharged his weapon and his statement denying that he discharged his weapon, and the prosecutor's related remarks on summation, did not violate his constitutional right against self-incrimination. With respect to public employees, "[u]nder both the State and Federal Constitutions, a statement made under threat of dismissal is protected by the privilege against self-incrimination and automatically immunized from use in criminal proceedings" (*People v Corrigan,* 80 NY2d 326, 329 [1992]; *see Lefkowitz v Turley,* 414 US 70, 78-79 [1973]; *Gardner v Broderick,* 392 US 273, 276-277 [1968]; *Garrity v New Jersey,* 385 US 493, 500 [1967]; *Matter of Matt v Larocca,* 71 NY2d 154, 159 [1987]; *People v Avant,* 33 NY2d 265, 271 [1973]; *People v Smith,* 29 AD3d 1035, 1037 [2006]). "In formulating a test for what constitutes a compelled statement, some courts, following the teaching of *United States v Indorato* (628 F2d 711, 716-717 [1st Cir 1980]), require a showing that a defendant was explicitly made aware that discharge would result from a failure to cooperate. Other courts have adopted a two-part test articulated in *United States v Friedrick* (842 F2d 382,

395 [DC Cir 1988]), in which the defendant must subjectively believe that termination could follow an assertion of the privilege and, importantly, that belief must be objectively reasonable under the circumstances" (*People v Smith*, 29 AD3d 1035, 1037 [2006] [some citations omitted]).

Here, as in *Smith*, the defendant's contention is without merit under either test (*see id.* at 1037). First, it is undisputed that the defendant was not "explicitly threatened with termination of his employment" (*United States v Johnson*, 131 F3d 132 [2d Cir 1997] [table; text at 1997 WL 792443, *2, 1997 US Dist LEXIS 36363, *5 (1997)]; *see United States v Indorato*, 628 F2d at 716). Additionally, there is no evidence in the record that the defendant subjectively believed he was being presented with a situation where he would be terminated if he asserted his constitutional privilege (*see People v Smith*, 29 AD3d at 1037). Furthermore, even if there were evidence of such a subjective belief, the record does not reveal objectively reasonable circumstances to support such a belief. The trial testimony of police witnesses established that a refusal to answer questions about a firearm discharge would not have resulted in automatic termination, but rather, a report to the Internal Affairs Bureau and further investigation.

The defendant contends that his statement denying that he discharged his firearm should have been precluded based on the People's failure to give notice of their intent to offer evidence of this statement at trial, allegedly in violation of CPL 710.30 (1) (a). This contention is without merit. Where, as here, the defendant "lacks a constitutional basis upon which to challenge the voluntariness of his statement," the People are not required to serve the defendant with notice (*People v Rodney*, 85 NY2d 289, 291-292, 293 [1995]). Moreover, since the defendant was charged with falsely reporting an incident in the third degree, among other things, his statement that he did not discharge his firearm constituted a res gestae statement and, as such, was not discoverable (*see* CPL 240.20 [1] [a]; *People v Copes*, 200 AD2d 680, 681 [1994]; *People v Wells*, 133 AD2d 385, 386 [1987]).

The trial court did not err in permitting an expert to testify regarding the meaning of section 35.30 of the Penal Law, even though such testimony could have touched upon the ultimate question of whether the shooting was justified. Where the subject matter is "beyond the ken of the average juror, it matters not whether the [expert] testimony relate[s] to the ultimate issue in the case" (*People v Hicks*, 2 NY3d 750, 751 [2004]; *see People v Dallas*, 47 AD3d 725, 726 [2008]).

The trial court did err, however, in permitting the expert to testify regarding police guidelines relating to the justified use of deadly physical force. Contrary to the People's assertion, this contention is preserved for appellate review (*see People v Lewis*, 5 NY3d 546, 551 [2005]; *People v Mezon*, 80 NY2d 155, 161 [1992]). The justification defense before the jury was based on section 35.30 of the Penal Law, which permits the use of deadly physical force by a police officer "in the course of effecting or attempting to effect an arrest . . . of a person whom he or she reasonably believes to have committed . . . burglary in the first degree or any attempt to commit such a crime" (Penal Law § 35.30 [1] [a] [ii]). The police guidelines, as testified to by the expert, permit the use of deadly physical force solely "when an individual is presented with an [imminent] threat of deadly physical force/serious physical injury to themselves or a third person." The testimony regarding the police standard for justified use of deadly physical force was irrelevant to the justification defense relied upon by the defendant, and it had the potential to mislead the jury on this key issue. Nevertheless, any prejudice that might have resulted from the error was sufficiently mitigated by the court's interjections, during the testimony, as to the statute's provisions versus the police guidelines, and its instruction to the jury, during the final charge, to disregard the entire portion of the expert's testimony that pertained to "what the police department teaches officers concerning the use of deadly force when the officer is faced with the imminent deadly physical force by the perpetrator," followed by its proper charge as to justification pursuant to Penal Law § 35.30 (1) (a) (ii). The error was harmless, as there was overwhelming evidence of the defendant's guilt and no significant probability that, but for the expert's improper testimony, the defendant would have been acquitted (*see People v Williams*, 20 NY3d 579, 584-585 [2013]).

The defendant waived his contention that evidence of a prior bad act and an uncharged crime, with regard to which the People should have requested a *Molineux* hearing (*see People v Molineux*, 168 NY 264 [1901]) was erroneously admitted. The defendant neither objected to the testimony when it was adduced, nor requested a *Molineux* ruling at that time, when the trial court still could have conducted a hearing, and he affirmatively used the evidence in his direct examination of his own witnesses (*see People v Holmes*, 47 AD3d 946 [2008]; *People v Blackman*, 13 AD3d 640, 641 [2004]; *People v Spragis*, 5 AD3d 814, 815 [2004]).

The defendant's remaining contentions are without merit. Dillon, J.P., Dickerson, Duffy and Barros, JJ., concur.