Matter of Moon v County of Columbia (2025 NY Slip Op 06233)

Matter of Moon v County of Columbia

2025 NY Slip Op 06233

Decided on November 13, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 13, 2025

CV-24-1288
[*1]In the Matter of Roland Moon, Petitioner,
v
County of Columbia et al., Respondents.

Calendar Date:September 9, 2025

Before:Garry, P.J., Aarons, Fisher, McShan and Mackey, JJ.

Gleason Dunn Walsh & O'Shea, Albany (Mark T. Walsh of counsel), for petitioner.
Hinman Straub PC, Albany (Kristin T. Foust of counsel), for respondents.

Mackey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Columbia County) to review a determination of respondent Director of Columbia County Department of Probation terminating petitioner's employment.
Petitioner was employed by respondent Columbia County Department of Probation as a probation officer. In May 2023, three disciplinary charges were filed against him relating to misconduct stemming from a variety of alleged behavior that was unbecoming an employee and/or constituted violations of the employer's workplace violence policy and anti-harassment policy. Following an extensive hearing conducted pursuant to Civil Service Law § 75 (1), a Hearing Officer issued a report in which he sustained the charges and recommended petitioner's dismissal from service. Respondent Director of Columbia County Department of Probation (hereinafter the Director) adopted the Hearing Officer's findings and terminated petitioner's employment. Petitioner commenced this CPLR article 78 proceeding to challenge the determination and, following joinder of issue, the matter was transferred to this Court for resolution (see CPLR 7804 [g]).
We confirm. At the outset, the determination is supported by substantial evidence. The disciplinary charges against petitioner essentially relate to three incidents, and the employer presented extensive testimony and documentary evidence at the hearing regarding each of them. The first incident involved a heated interview in April 2022 between petitioner and one of the probationers he was supervising. Numerous witnesses either saw or overheard portions of that interview and described how it quickly went off the rails, with petitioner escalating the situation by "yelling" at the probationer, accusing him of lying, barring him from leaving despite having no basis for doing so and eventually demanding to know whether he wanted "to take [it] outside." Indeed, the proof reflected that the interview became so contentious that others intervened to de-escalate the situation and separate the two men. The probationer was taken to the building lobby to speak to the Director, where petitioner followed and inappropriately interjected by angrily accusing the probationer of lying. The probationer was subsequently transferred to the caseload of another probation officer.
The second incident occurred in March 2023, when several witnesses described how petitioner was using his work computer for personal purposes, namely, playing a Japanese language tutorial at a high enough volume that it was distracting to his coworkers. When he left his office for a period of time with his door open and the tutorial still blaring, a probation officer in a neighboring office sent petitioner and his supervisor an email asking that he either turn the volume down or close his door.[FN1] Petitioner returned and gestured aggressively at that probation officer while loudly telling her that if she "want[ed] to make this formal[*2]," he would "go formal," and he proceeded to author an unprofessional reply to her email telling her to "keep [her] loud fake laugh and loud constant personal and non[-]work conversation to [her]self." The other probation officer found petitioner's behavior to be threatening and she filed a formal human resources complaint against him the next day, and she testified how her sense of threat was reinforced when she subsequently overheard petitioner loudly having a telephone conversation in which he said she was "loud," "unhappy," and needed to "check herself."
The third incident occurred in April 2023, when petitioner and a different female probation officer pulled into the office parking lot around the same time. This probation officer testified that she was "uncomfortable" around petitioner due to his prior behavior and decided to wait in her vehicle until he went inside, but he sat in his vehicle and "star[ed] over at [her] car" with his sunglasses on for several minutes. When she finally got out of her car, petitioner also got out of his vehicle and waited for her by the stairs to the employee entrance. The other probation officer was worried enough about what might happen next that she began recording audio on her phone, and that recording was entered into evidence at the hearing. She testified that petitioner immediately started following her once she passed him and was walking behind her so closely on the stairs that he would have gone "right into [her] back" if she had stopped. She further testified, and the audio recording of the incident reflects, that petitioner loudly said "thanks" as she pushed the door far enough open for both of them to go through and, snickering, asked her what her problem was when she told him not "to start" with her. She found the incident so disturbing that she immediately reported it to her supervisor and, like the probation officer who had been involved in the March 2023 incident, soon filed a formal complaint about it.
Without belaboring the point further, this proof of petitioner's unprofessional and threatening conduct during the April 2022, March 2023 and April 2023 incidents reflected that he had engaged in conduct unbecoming a County employee in numerous respects. The County further documented how petitioner's behavior during those incidents constituted misconduct in that it ran afoul of the County's workplace violence prevention and anti-harassment policies. To be sure, petitioner presented his own and other testimony that challenged aspects of the other witnesses' accounts and generally attempted to put his behavior in a more favorable light, portraying himself as the victim of a conspiracy mounted by many of his coworkers. The Hearing Officer found petitioner to be wholly incredible in his testimony, however, and credited the proof that he had engaged in extensive misconduct. We defer to those assessments of credibility and, being mindful that substantial evidence is "a minimal standard that requires [*3]less than the preponderance of the evidence and demands only the existence of a rational basis in the record as a whole to support the findings upon which the determination is based," are satisfied that the credible proof in this record was sufficient to support the determination of guilt (Matter of Wales v City of Saratoga Springs, 200 AD3d 1262, 1264 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Foster v Saratoga Springs City School Dist., 16 AD3d 824, 825-826 [3d Dept 2005]; Matter of Gadway v Connelie, 101 AD2d 974, 975 [3d Dept 1984]).
As for petitioner's various procedural and evidentiary challenges to the determination, he first complains that the report issued by the Hearing Officer failed to explicitly find whether he was guilty of each of the three charges against him. Although we agree with petitioner that the better practice would have been for the Hearing Officer to conform his findings to the factual specifications set forth in the notice of discipline, the fact remains that the Hearing Officer issued a 30-page report that painstakingly set forth the proof he deemed credible and specified which facts had been established at the hearing. The Hearing Officer went on to find, tracking the first disciplinary charge, that petitioner was guilty of misconduct in various respects. By going on to find petitioner guilty of conduct that violated the County's workplace violence prevention policy, the Hearing Officer similarly determined that petitioner was guilty of the allegations underlying the second disciplinary charge. Finally, the Hearing Officer's finding that petitioner had engaged in actions that created a hostile and intimidating work environment, despite mistakenly characterizing those actions as violations of the workplace violence prevention policy rather than the County's anti-harassment policy, reflects a finding of guilt upon the third disciplinary charge. Under these circumstances, we are satisfied that the report was sufficiently detailed to alert petitioner that he had been found guilty as charged and gave him "the opportunity to intelligently challenge and obtain adequate judicial review of the same" (Matter of Lory v County of Washington, 77 AD3d 1265, 1266 [3d Dept 2010]; see Matter of Ernst v Saratoga County, 251 AD2d 866, 867 [3d Dept 1998]).
As for petitioner's suggestion that the Hearing Officer found him guilty of uncharged conduct, he correctly points out that the Hearing Officer found that his actions amounted to uncharged incompetence. Petitioner overlooks that the Hearing Officer then acknowledged that incompetence had not been charged and that, as required, his "recommendation was [only] based on his finding[s]" regarding the charged misconduct (Matter of Finigan v Lent, 189 AD2d 935, 939 [3d Dept 1993], appeal dismissed 81 NY2d 1067 [1993], lv denied 82 NY2d 657 [1993]; see Matter of Nichols v Village of Malone, 229 AD2d 721, 722 [3d Dept 1996]). The Hearing Officer further found [*4]that petitioner had engaged in uncharged misconduct by lying in a complaint he had filed regarding the April 2023 incident, dishonesty that emerged when petitioner admitted to it on the last day of the hearing.[FN2] Our review of the Hearing Officer's report reflects, however, that he appropriately relied upon that finding in assessing petitioner's credibility as a witness and in discerning the appropriate penalty (see Matter of Bigelow v Board of Trustees of Inc. Vil. of Gouverneur, 63 NY2d 470, 474-475 [1984]; Matter of Hardy v Kraham, 224 AD3d 946, 948 n [3d Dept 2024]; Matter of Boyea v Board of Educ. of Madrid-Waddington Cent. School Dist., 209 AD2d 852, 853 [3d Dept 1994], lv denied 85 NY2d 804 [1995]; Matter of Murano v Village of Goshen, 193 AD2d 1011, 1011 [3d Dept 1993]). We are accordingly satisfied that the Hearing Officer's findings of guilt were premised upon charged misconduct as required.
Petitioner also points out that he was interviewed by a human resources assistant shortly after the March 2023 incident and argues that the "statements obtained from said questioning [and] any evidence or information obtained as a result of said questioning" should have been excluded from evidence because he was a "potential subject of disciplinary action" and was not notified of his entitlement to have a union representative present (Civil Service Law § 75 [2]; see Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd., 8 NY3d 226, 233-234 [2007]). Although the Hearing Officer rejected that argument, he also declined to consider the statements made by petitioner during the questioning out of an abundance of caution, seemingly rendering the argument academic (see Matter of Ernst v Saratoga County, 234 AD2d 764, 766-767 [3d Dept 1996]; see also Liberto v Liberto, 123 AD2d 669, 669-670 [2d Dept 1986]). Assuming, without deciding, that the argument remains live in that other, unspecified, evidence might have been obtained from the questioning and presented at the hearing, "the applicability of [Civil Service Law § 75 (2)] at the initial inquiry stage hinges, at least in part, on whether the initial inquiry itself is deemed to be part of, or separate from, the disciplinary process" (Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police, 43 AD3d 125, 131 [3d Dept 2007], affd 11 NY3d 96 [2008]). The hearing testimony from the County's human resources manager, as well as the human resources assistant who initially spoke to petitioner, reflected that the assistant was strictly on a "fact-finding mission[ ]" to learn what had happened during the March 2023 incident and spoke to several Probation Department employees about it. Both the human resources manager and the human resources assistant confirmed that there was "no indication that anyone [would] be disciplined" at that point and that the assistant was not involved in deciding who, if anyone, might eventually be disciplined. It was only after the assistant [*5]completed her fact-finding efforts that the human resources manager determined that petitioner was potentially subject to disciplinary action and, at that point, petitioner was served with a notice of employee representation and interviewed with a union representative present. In view of that proof, which the Hearing Officer found credible, the protections of Civil Service Law § 75 (2) had not attached when petitioner spoke to the human resources assistant in March 2023 because he had not been identified as a potential subject of discipline within the meaning of that statute (see Matter of Ernst v Saratoga County, 234 AD2d at 767).
Petitioner's claims regarding the alleged bias of the Hearing Officer, and the supposed need of the Director to disqualify himself from reviewing the Hearing Officer's report, are unavailing. To the extent that petitioner's contention regarding the Hearing Officer is preserved despite his failure to raise it at the hearing (but see Matter of Wales v City of Saratoga Springs, 200 AD3d at 1263; Matter of Brennan v New York State & Local Empls. Retirement Sys., 50 AD3d 1374, 1377 [3d Dept 2008]),"[b]ecause hearing officers are presumed to be free from bias, an appearance of impropriety is insufficient to set aside an administrative determination; petitioner must provide factual support for his claim of bias and prove that the outcome flowed from that bias" (Matter of Compasso v Sheriff of Sullivan County, 29 AD3d 1064, 1065 [3d Dept 2006]; see Matter of Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d 186, 197 [1981], cert denied 454 US 1125 [1981]; Matter of Zlotnick v City of Saratoga Springs, 122 AD3d 1210, 1212 [3d Dept 2014]). To the extent that petitioner points to aspects of the record that he claims are suggestive of bias, he fails to demonstrate how the outcome, which was supported by compelling proof of his guilt, flowed from that alleged bias (see Matter of Hardy v Kraham, 224 AD3d at 948; Matter of Zlotnick v City of Saratoga Springs, 122 AD3d at 1212; Matter of Compasso v Sheriff of Sullivan County, 29 AD3d at 1065). As for the Director, regardless of whether petitioner raised the issue at the hearing, "it is incumbent upon a person who has been extensively involved in the disciplinary process to 'disqualify[ ] himself or herself from [involvement in] rendering a final determination' " (Matter of Ashe v Town Bd. of the Town of Crown Point, N.Y., 97 AD3d 1022, 1023 [3d Dept 2012], quoting Matter of Baker v Poughkeepsie City School Dist., 18 NY3d 714, 718 [2012]). That said, while the Director here initiated the charges against petitioner, he had no firsthand knowledge of the underlying conduct apart from his tangential involvement in the April 2022 incident and did not testify at the hearing. The Director was not "personally or extensively involved in the disciplinary process" under those circumstances and, as a result, was not obliged to disqualify himself from reviewing the Hearing Officer's report[*6](Matter of Ernst v Saratoga County, 234 AD2d at 767; see Matter of Ost v Supervisor of Town of Woodstock, 251 AD2d 724, 726 [3d Dept 1998], lv denied 92 NY2d 817 [1998]; Matter of Agugliaro v Commissioner of Dept. of Transp. of State of N.Y., 135 AD2d 711, 711 [2d Dept 1987], lv denied 72 NY2d 801 [1988]).
Turning lastly to the penalty, there is no reason to remit for a penalty to be "separately assessed as to each of the charges" because substantial evidence supports all of the charges upon which the penalty was imposed (Matter of Wojewodzic v O'Neill, 295 AD2d 670, 672 [3d Dept 2002]; see e.g. Matter of Brown v Saranac Lake Cent. School Dist., 273 AD2d 785, 786 [3d Dept 2000]). In view of petitioner's demonstrated pattern of unprofessional and aggressive behavior, for which he failed to accept any responsibility or indicate a willingness to modify in the future, the penalty of termination "was not so disproportionate to the offense as to shock our sense of fairness" (Matter of McLean v City of Albany, 13 AD3d 851, 853 [3d Dept 2004]; see Matter of Bottari v Saratoga Springs City School Dist., 3 AD3d 832, 833 [3d Dept 2004]).
Garry, P.J., Aarons, Fisher and McShan, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: The other probation officer testified that she was uncomfortable approaching petitioner directly about her request to turn the tutorial down because he had not spoken to her in over a year, for reasons that were unclear to her, and that she did not "know how he was going to react."

Footnote 2: Counsel for petitioner himself marked that complaint for identification, questioned witnesses about its contents and gave no reason why it should not be admitted into evidence beyond suggesting that the Hearing Officer had heard "enough" about the April 2023 incident. Under those circumstances, petitioner's argument that the Hearing Officer erred in placing the complaint into evidence and briefly questioning petitioner himself about its contents is meritless (compare Matter of Moore v Alexander, 53 AD3d 747, 748-749 [3d Dept 2008], lv denied 11 NY3d 710 [2008]).